# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION
### Civil Action No. 5:16-CV-298-BO

| | |
|---|---|
| GARY AND ANN CHILDRESS, RUSSELL AND SUZANNAH HO, and MICHAEL CLIFFORD, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., CHASE BANK USA, N.A., and CHASE BANKCARD SERVICES, INC.,<br><br>Defendants. | **STIPULATION CONCERNING PROTOCOL FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION** |

WHEREAS, the above-captioned action (the "Action"), brought by Plaintiffs Gary and Ann Childress, Russell and Suzannah Ho, and Michael Clifford ("Plaintiffs") against Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Chase Bank USA, N.A., and Chase Bankcard Services, Inc. (collectively "Defendants" and, together with Plaintiffs, the "Parties"), is pending before this Court; and

WHEREAS, the Parties have engaged in discussions regarding the format of production of documents and electronically stored information ("ESI") that are responsive to requests made by the Parties; and

WHEREAS, the Parties will work in good faith to avoid unduly burdensome discovery practices that are not proportional to the needs of the case, including collecting, reviewing, and producing or retrieving substantial quantities of non-responsive ESI. In the event of a dispute or

disagreement, the Parties will meet and confer in a good faith effort to resolve such dispute or disagreement. NOW, THEREFORE, IT IS HEREBY STIPULATED BY AND BETWEEN THE PARTIES, THROUGH THEIR RESPECTIVE COUNSEL, AS FOLLOWS:

**A.     Preservation of ESI**

The parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in their possession, custody or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody or control.

2. The parties shall supplement their disclosures in accordance with Rule 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under (A)(3) or (B)(1)-(2) below).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:
    a. Deleted, slack, fragmented, or other data only accessible by forensics;
    b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;
    c. On-line access data such as temporary internet files, history, cache, cookies, and the like;
    d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (D)(5));
    e. Back-up data that are substantially duplicative of data that are more easily accessible elsewhere;
    f. Server, system or network logs;
    g. Data remaining from systems no longer in use that is unintelligible on the systems in use; and

       h.     Electronic data (e.g. email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

In the event preservation and/or collection of data is cost-prohibitive, the parties will meet and confer in good faith to discuss cost-sharing.

**B.**    **Privilege**

    1.    With respect to attorney-client privileged or attorney work-product ESI generated for this case after the filing of the complaint, parties are not required to include any such information in privilege logs.

    2.    Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

    3.    Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection, if: (i) such information appears on its face to have been inadvertently produced; or (ii) the producing party provides notice within 15 days of discovery by the producing party of the inadvertent production.

    4.    No later than 60 days after each production, the parties will provide a privilege log that complies with the requirements of Federal Rule of Civil Procedure 26. The privilege log shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title and date created. Should the available metadata provide insufficient information for the purpose of evaluation the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil

Procedure. Where there is a chain of privileged e-mails, the Producing Party need only include one entry on the privilege log for the entire e-mail chain as long as the log entry identifies that the entry refers to an e-mail chain and lists all recipients of the latest email in the chain. Redacted documents need not be logged as long as (a) for e-mails, the bibliographic information is not redacted and (b) for non-e-mail documents, the redaction is noted on the face of the document.

C. **ESI Discovery Procedures**

1. <u>On-site inspection of electronic media.</u> Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. <u>Search methodology.</u> The parties shall timely attempt to reach agreement on appropriate search terms, or an appropriate computer- or technology-aided methodology, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search terms or computer- or technology-aided methodology as necessary. In the absence of agreement on appropriate search terms, or an appropriate computer- or technology-aided methodology, the following procedures shall apply:

   a. A producing party shall disclose the search terms or queries, if any, and methodology that it proposes to use to locate ESI likely to contain discoverable information. The parties shall meet and confer to attempt to reach an agreement on the producing party's search terms and/or other methodology.

   c. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided.

   d. The producing party shall search both non-custodial data sources and ESI maintained by the custodians.

3. <u>Format.</u> The parties agree that ESI will be produced to the requesting party with searchable text, in a format to be decided between the parties. Acceptable formats include, but are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files), and searchable PDF. Unless otherwise agreed to by the parties, Microsoft Excel, CSV files, audio, video files, or other database files will be produced in native format. This may not constitute a complete list of files for native production and does not preclude parties from producing other files natively where appropriate.

   a. Any produced native file will be named according to the first Bates number of the corresponding electronic document (*e.g.*, [Production Number].xlsx). The Parties may designate documents as confidential via slip sheets for native files or within the file name (e.g., [Production Number][confidentiality designation].xlsx.

   b. All TIFF formatted documents will be single page, black and white, Group 4 TIFF at 300 x 300 dpi resolution and 8 1/2 X 11 inch page size. If the Receiving Party believes that document(s) needs to be imaged at a higher resolution, different page size, or color in order to adequately understand the contents of specific document(s), it shall make a reasonable request for re-production of the document(s) in the different format. Any such request should be reasonably tailored to the case and shall identify the documents for which re-production is requested by Bates number. If the Parties disagree about whether re-production is appropriate or necessary, they shall meet and confer before bringing the matter to the Court's attention.

   c. The following processing specifications shall apply to ESI produced in

TIFF, word processing, or Microsoft Excel documents:

    (1) Tracked changes and revisions in word processing documents should be included in the TIFF image;

    (2) Word processing documents should include all headers, footers, and footnotes;

    (3) All date, time, and filename macros will be displayed as the macro field code; and

    (4) Where electronic, non-email documents (including but not limited to word processing and Excel documents) include embedded files or documents, the Parties agree to produce such documents intact, absent a claim of privilege, work product, or other applicable protection, so long as each embedded document contains responsive information. To the extent the document or one or more embedded documents is privileged, irrelevant, or non-responsive, the responsive, non-privileged documents shall be produced and the privileged, irrelevant, or non-responsive documents shall, at the Producing Party's option, either (A) be Bates numbered in sequence with the embedded documents and the redacted privileged documents shown on a privilege log with corresponding Bates numbers; or (B) include placeholders indicating the privileged, irrelevant, or non-responsive documents were withheld, and describe the removed privileged documents on a privilege log with corresponding control numbers assigned by the Producing Party.

d. Microsoft PowerPoint presentations should be processed to show hidden slides and speaker's notes.

e. The following processing specifications shall apply to compressed or

1 zipped files:

  (1) All compressed or zipped ESI shall be unzipped or decompressed before production; and

  (2) To the extent a responsive, non-privileged compressed or zipped file contains embedded files, or links to other files, such embedded files or links to other files do not need to be produced initially, but upon reasonable request, the Parties will meet and confer to discuss production of such files.

 f. The Parties agree to produce e-mail chains or families intact, absent a claim of privilege, work product, or other applicable protection, so long as each document contains responsive information. As a general matter, subject to specific review, an e-mail message and its attachments shall not be withheld from production based on the fact that one or more attachments are privileged, irrelevant, or non-responsive. To the extent the message or one or more attachments is privileged, irrelevant, or non-responsive, the responsive, non-privileged documents shall be produced and the privileged, irrelevant, or non-responsive documents shall, at the Producing Party's option, either (A) be Bates numbered in sequence with the attachments and the redacted privileged documents shown on a privilege log with corresponding Bates numbers (though a redacted privileged document does not need to be logged if it complies with the requirements of Section B. Paragraph 4 above); or (B) include placeholders indicating the privileged, irrelevant, or non-responsive documents were withheld, and describe the removed privileged documents on a privilege log with corresponding control numbers assigned by the Producing Party.

 g. Unless otherwise agreed, all dynamic date and time fields, where such

fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Greenwich Mean Time (GMT). The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hard-coded text within a file. Dates and times that are hard-coded text within a file (for example, in an e-mail thread, dates and times of earlier e-mail messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text in accordance with the provisions herein.

    h.    To the extent information from databases and other structured ESI is requested, the Parties agree to meet and confer regarding the appropriate format of production and which fields are or may be subject to production.

4. <u>Paper documents.</u> All paper documents shall be produced as (1) .TIFF images for black and white documents, or (2) .JPG images for color documents. Such documents shall be accompanied by a cross-referenced load file, including begbates, endbates, and attachment bates range. The Parties do not waive and hereby reserve the right to make responsive documents available for inspection pursuant to Federal Rule of Civil Produce 34. The parties agree to use reasonable efforts to maintain the family relationships of paper documents by scanning and Bates numbering those documents in sequential order. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. This provision does not obligate any party to produce documents in a manner other than that in which those documents were kept in the ordinary course of business.

5. <u>Production of redacted documents.</u> To the extent that any document produced in

TIFF form contains information that is redacted, such documents shall be produced in the form of a redacted TIFF Image, with the extracted text based off the redacted TIFF image. For documents produced in a form other than TIFF, the text should be manipulated to remove redacted information and indicate that redaction has occurred.

6. <u>Bates Numbers</u>. Bates numbers and any confidentiality designations should be electronically branded on each produced image, or as otherwise provided in any discovery confidentiality order and/or protective order concerning protection of confidential or otherwise sensitive information that may be entered by the Court. The confidentiality designation shall be "burned" into the documents image (where applicable). No other legend or stamp will be placed on the document image. If the page identifier or legend inadvertently obliterates, conceals, or interferes with any information from the source document, the Receiving Party may request a legible copy. Additionally, Bates numbering should:

   a. be unique across the entire production in any given case;
   b. maintain a constant length (0-padded) across the entire production;
   c. contain no special characters or embedded spaces; and
   d. be sequential within a given document.

7. <u>De-duplication.</u> Except as otherwise provided in this Stipulation, a Party is only required to produce a single copy of a responsive document. Parties shall de-duplicate globally within their own productions.

8. <u>Metadata fields.</u> If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced: begbates, endbates, attachment bates range, file extension; custodian; author/from; recipient/to, cc and bcc; title/subject; file name; date and time sent, modified and/or received; and hash value.

9. <u>No production required.</u>  The Parties may exclude from collection, review, and production ESI or data with file extensions that are not able to be processed or natively viewed by standard means, or that typically contain no meaningful user-created data and/or cannot be reviewed in any meaningful format, including those file types contained on the list established by the National Institute of Standards and Technology ("NIST"), including but not limited to: ani; bat; c; cab; cfg; class; dll; ex_; exe; fon; hlp; ico; icon; inf; ini; isu; java; jpa; kqp; mpe; msi; ocx; out; pcd; pcx; reg; sfw; sys; tag; ttf; and xp files.

**D.  Confidentiality**

The Parties incorporate the provisions of any discovery, confidentiality, or protective order concerning protection of confidential or otherwise sensitive information that may be entered by the Court.  For the avoidance of doubt, nothing in this Stipulation shall supersede or alter any confidentiality order and/or protective order concerning the protection of confidential or otherwise sensitive information that may be entered by the Court.

**E.  Method of Production**

1. The Producing Party may produce materials by electronic transmission, such as FTP or secure file transfer (e.g., Accellion).  A production by electronic transmission shall be considered complete when made available to the Receiving Party by electronic transmission.  Alternatively, or in addition to production by electronic transmission, the Producing Party may produce materials on electronic storage media such as USB hard drives or DVDs.  If produced on electronic storage media, each piece of electronic storage media shall be assigned a sequential volume number that identifies the party to whom the volume is attributable (e.g., CHILDRESS001).

2. To maximize the security of information in transit, any media on which documents are produced may be encrypted by the Producing Party.  In such cases, the

Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

3. A party shall accompany each production of Documents with a cover letter specifying: (1) the volume or volumes comprising the production; and (2) the Bates range or ranges of the materials being provided on each volume.

Stipulated and Agreed: This the 24th day of March, 2017.

| | |
|---|---|
| /s/ Brandon S. Neuman_____ | /s/ Alan E. Schoenfeld_____ |
| KIERAN J. SHANAHAN | ALAN E. SCHOENFELD |
| *(NC State Bar No. 13329)* | *(NY State Bar No. 4500898)* |
| BRANDON S. NEUMAN | FIONA J. KAYE |
| *(NC State Bar No. 33590)* | *(NY STATE BAR NO. 4789293)* |
| CHRISTOPHER S. BATTLES | WILMER CUTLER PICKERING |
| *(NC State Bar No. 42682)* |    HALE AND DORR LLP |
| SHANAHAN LAW GROUP, PLLC | 7 World Trade Center |
| 128 E. Hargett Street, Suite 300 | 250 Greenwich Street |
| Raleigh, NC 27601 | New York, NY 10007 |
| Tel.: (919) 856-9494 | Tel: (212) 230-8000 |
| Fax: (919) 856-9499 | Fax: (212) 230-8888 |
| kieran@shanahanlawgroup.com | alan.schoenfeld@wilmerhale.com |
| bneuman@shanahanlawgroup.com | |
| cbattles@shanahanlawgroup.com | /s/ Nathan Atkinson_____ |
| | NATHAN ATKINSON |
| /s/ Knoll D. Lowney_____ | *(NC State Bar No. 27695)* |
| KNOLL D. LOWNEY | SPILMAN Thomas & Battle, PLLC |
| (WA STATE BAR NO. 23457) | 110 Oakwood Drive, Suite 500 |
| SMITH & LOWNEY, PLLC | Winston-Salem, NC 27103 |
| 2317 E. John Street | Tel: (336) 725-4710 |
| Seattle, WA 98112 | Fax: (336) 725-4476 |
| Tel.: (206) 860-2883 | natkinson@spilmanlaw.com |
| Fax: (206) 860-4187 | |
| knoll@igc.org | *Attorneys for Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Chase Bank USA, N.A., and Chase Bankcard Services, Inc.* |
| *Attorneys for Plaintiffs and the Proposed Class* | |

This the _____ day of March, 2017.

SO ORDERED

_____
Hon. Terrence W. Boyle
United States District Judge

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Stipulation Concerning Protocol for Production of Electronically Stored Information** has been electronically filed with the Clerk of Courts this the 24th day of March, 2017 using the CM/ECF system, which will send notification of such filing to the following:

>Nathan Atkinson
>Spilman Thomas & Battle, PLLC
>110 Oakwood Drive, Suite 500
>Winston-Salem, NC 27103
>
>Alan E. Schoenfeld
>Fiona J. Kaye
>Wilmer Cutler Pickering Hale and Dorr LLP
>7 World Trade Center
>250 Greenwich Street
>New York, NY 10007

**SHANAHAN LAW GROUP, PLLC**

By: */s/ Christopher S. Battles*
Kieran J. Shanahan, NCSB # 13329
Brandon S. Neuman, NCSB # 33590
Christopher S. Battles, NCSB # 42682
128 E. Hargett Street, Suite 300
Raleigh, North Carolina 27601
Telephone: (919) 856-9494
Facsimile: (919) 856-9499
kieran@shanahanlawgroup.com
bneuman@shanahanlawgroup.com
cbattles@shanahanlawgroup.com