UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:16-CV-298-BO

| | |
|---|---|
| GARY AND ANNE CHILDRESS, RUSSELL AND SUZANNAH HO, and MICHAEL CLIFFORD, *on behalf of themselves and others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> JP MORGAN CHASE & CO., JP MORGAN CHASE BANK, N.A., CHASE BANK USA, N.A. and CHASE BANKCARD SERVICES, INC., <br><br> Defendants. | **MEMORANDUM IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER** |

NOW COME Plaintiffs Gary and Anne Childress, Russell and Suzannah Ho, and Michael Clifford ("Plaintiffs"), pursuant to Rule 16(b)(4) and LR 7.1(e), to submit the following Memorandum in Support of their Motion to Modify the Case Schedule.

**INTRODUCTION**

Despite prior cooperation among the parties, Plaintiffs regret that Defendants[1] (collectively "Chase") are now unwilling to agree to *any* modification of the case schedule, even though the slow pace of Chase's document production is the primary reason modification is required. Recent events, including a spate of self-serving letters and emails, suggest that Chase seeks to use delay and "gotcha" litigation tactics to try to deprive justice from tens of thousands of military families who Chase overcharged in violation of the Servicemembers Civil Relief Act (SCRA) and its own more-generous proprietary SCRA program.

Plaintiffs, other class members, and their families made a commitment to serve our country, as servicemembers who were deployed to active duty in Iraq, Afghanistan, and elsewhere. They provided their deployment orders to Chase and asked for the statutory and contractual benefits to which they were entitled under the SCRA[2] and Chase's more generous proprietary program. Chase cannot deny that it deprived Plaintiffs and the putative class of their statutory and contractual benefits. Indeed, Chase and the United States Office of Comptroller of Currency ("OCC") filed a Consent Order arising out of Chase's pervasive SCRA violations. Yet without sufficient time to complete discovery in this matter, justice could be denied to these servicemembers. Plaintiffs and the putative class deserve better from one of the Nation's largest banks.

---

[1] Defendants in this matter are JP Morgan Chase & Co., JP Morgan Chase Bank, N.A., Chase Bank USA, N.A., and Chase BankCard Services, Inc.
[2] 50 U.S.C. § 3901 et seq. (Formerly 50 U.S.C. Appx. § 501 et seq.)

1

Plaintiffs propose the following modification of the case scheduling order, which includes two primary components: (1) extending existing deadlines by six months; and (2) phasing discovery by making new discovery deadlines applicable only to class certification and liability, allowing the parties to defer the more contentious and intensive class-damages discovery.

The proposed modification is as follows:

| Existing Schedule | Proposed Schedule: |
|---|---|
| Close of Fact Discovery: August 11, 2017 | Close of Fact Discovery on Liability and Class Certification: February 11, 2018. |
| Close of Expert Discovery: November 24, 2017 | Close of Expert Discovery on Liability: March 25, 2018. |
| Dispositive Motion Deadline: January 24, 2018. | Dispositive Motion Deadline: July 24, 2018. |
| N/A | Deadline for Status Conference and Joint Status Report to Establish Damages Discovery Plan: July 31, 2018 . |

The current discovery deadlines, if not extended, will deny Plaintiffs any reasonable opportunity to successfully prosecute their case, despite Plaintiffs' diligence. Plaintiffs propounded discovery requests at the very outset of the discovery period, but Chase does not intend to produce its responsive documents and privilege log until the end of the discovery period. Chase will have taken *the entire discovery period* just to respond to Plaintiffs' first document requests, leaving no time for Plaintiffs to obtain documents that have to be reviewed by the OCC, resolve discovery disputes, and take depositions.

Finger pointing is unnecessary to justify this request to modify the schedule. Even if the parties had moved a few days quicker here or there, the complexity of the case, as it has unfolded, the time consuming ESI process, and the OCC delays would have required this request for modification. Plaintiffs accepted Chase's claims that it needed an unusual amount of time to comply with its discovery responsibilities — always expecting that Chase would jointly request a

2

modification if necessary. Declaration of Knoll Lowney in Support of Plaintiffs' Motion to Modify Schedule ("Lowney Decl.") ¶ 30. Chase's present intransigence suggests that it may have been intentional foot-dragging while feigning cooperation as a litigation tactic. *Id*.

Despite Plaintiffs' early discovery requests, Chase has still produced almost none of the key information that Plaintiffs need to prepare for depositions, move for class certification, and establish liability. Given their experience in *Childress v. Bank of America,* No. 5:15-cv-00231-BO (E.D.N.C., filed June 1, 2015) ("*Bank of America*"), Plaintiffs and their counsel understand what information is needed to litigate this case, but so far Chase has refused to provide it. Lowney Decl. ¶ 32. This is a marked contrast to Bank of America's cooperative approach to discovery in *Bank of America*. *Id*.

Assuming that Chase actually produces all responsive documents and privilege logs by August, 2017, Plaintiffs are hopeful that only a six-month extension of the schedule will be necessary to complete fact discovery on liability and class certification, putting Plaintiffs in position to bring motions for summary judgment on liability and a motion for class certification.

Damages discovery is another matter. Chase outright refuses to provide the information that Plaintiffs require to quantify class damages, including account-level documentation for each class member going back to the beginning of the class period. Chase understandably argues that intensive discovery on class-wide damages is disproportional to the needs of the case *at this time*. Yet, under the current schedule *this is the only time* to conduct such discovery. *See* DE 30 (case not bifurcated).

Rather than seeking to compel such account-level, class-wide discovery at this time, Plaintiffs request to modify the scheduling order to allow phased discovery. The proposed order allows parties to prioritize discovery on liability and class certification issues, while deferring the

3

more contentious and expensive discovery on class-wide damages. This will allow a shorter modification of the schedule, balance the interests of the parties, and – if this case follows the path of *Bank of America* – could allow damage discovery to proceed cooperatively in a settlement context.[3]

## STATEMENT OF FACTS

**A.     Plaintiffs' discovery requests.**

On October 11, 2016, the Court issued a Scheduling Order providing a ten-month period for fact discovery, with fact discovery closing in August, 2017.[4] DE 30.

Plaintiffs propounded their first discovery requests on October 5, 2016,[5] only weeks after the 26(f) conference. Lowney Decl., ¶ 2. Yet, Chase will not complete its production of documents and privilege logs responsive to these requests until August, 2017, the current close of discovery. *Id.; id.* at ¶¶ 16, 25*; see* DE 38, ¶ B.4, DE 30. Then, several important documents may have to go through a lengthy process at the OCC before they can be turned over to Plaintiffs. Lowney Decl. at ¶ 28.

Until recently, the parties have worked cooperatively to address scheduling constraints and discovery disputes, including providing mutual extensions of discovery deadlines where needed. See *id.*, ¶¶ 5-7, 10-12, 15 (agreements reached regarding: 30-day extension of discovery deadlines; proposing extension of mediator selection deadline; establishing ESI protocol, including search terms and custodians; proposed protective order; rescheduling Chase's depositions). Plaintiffs

---

[3] Alternatively, Plaintiffs may propose to conduct discovery into class-wide damages through the appointment of a special master or another procedure that would be less burdensome on the parties and the Court.
[4] The parties had proposed a 12-month fact-discovery period. DE 29, ¶ 1.d.
[5] Plaintiffs filed a Second Set of Requests for Production of Documents on October 20, 2016, and a First Set of Interrogatories on Defendant Chase Bank USA, N.A. on October 20, 2016. Lowney Decl., ¶ 4. In an effort to overcome Chase's attempt to evade meaningful interrogatory responses through self-serving interpretations of the requests, Plaintiff Russell Ho served Interrogatories on February 24, 2017. Defendants responded on March 29, 2017 with only a modicum of additional information.

4

reasonably believed that this cooperation would continue if Chase's slow pace of production necessitated a joint motion to modify the schedule. *Id*. at ¶ 30. Instead, this cooperation hit an abrupt road block on March 27, 2017, when Chase refused to even discuss a mutually agreeable case schedule extension to address the obvious infeasibility of completing discovery before the current August 2017 deadline. *Id*., ¶ 33; Exhibit 4.

**B.      Plaintiffs' outstanding discovery needs on liability and class certification.**

From their experience litigating the parallel *Bank of America* case, Plaintiffs know what key information exists that is relevant to liability and class certification, but Chase has so far not produced it. *Id*. at ¶ 32. Plaintiffs diligently have reviewed and coded all of the documents from the first three batches and are continuing to analyze the fourth. *Id*., ¶¶ 17-21. However, so far Chase has provided mostly just Plaintiff-specific account-level documents (e.g., monthly statements, internal accounting), summary documents, form letters, call-center procedures, boilerplate account agreements, and some high-level audit summaries that lack necessary detail. *Id*. Chase has produced ***virtually none*** of the key information that Plaintiffs require to prepare for depositions, move for class certification, establish liability, or quantify individual or class damages. *Id.*; *id*. *at* ¶ 27, 32. This includes, but is not limited to, individualized, account-level documents related to Chase's internal audits of its SCRA compliance, as well as certain documents deemed so important that they are being kept in hard copies by custodians. *Id*.; *id.* at ¶ 25. Chase's tactics leave Plaintiffs still in the dark about (1) the nature and extent of its admitted overcharges in violation of the SCRA (liability); (2) the nature and extent of its overcharges in violation of its proprietary SCRA program (liability); (3) the number and identity of overcharged servicemembers (the class); and (4) when the overcharges began (class period). *Id*.

5

**C. Some discovery disputes cannot be resolved until after August.**

As discussed further in Plaintiffs' forthcoming motion to compel, Defendants have maintained numerous improper objections and have refused to produce any documents related to key issues, including (a) pre-2010 violations, (b) Defendants' internal calculations of overcharges, (c) records and/or communications involving parent defendant JPMorgan Chase & Co, and (d) documents maintained in hard copy, such as detailed audit guides or SCRA program policies. *Id.*, ¶ 27.

Plaintiffs have made every effort to resolve these disputes without turning to the Court, including multiple rounds of written correspondence and discovery conferences. *Id.*, ¶¶ 22, 24. In response to the most recent conference, Chase finally agreed to give Plaintiffs some key information that they had refused for almost six months, but has so far not complied with its promises on such production. *Id.*, ¶ 26, Exhibit 3. Plaintiffs are moving to compel discovery on those issues which are currently ripe, but other discovery disputes will not be clear enough for motions practice until Chase finishes producing documents and its privilege log in approximately August, 2017. *Id.*, ¶¶ 16, 25.

**D. After August, some key documents will still need to undergo OCC review before being turned over to Plaintiffs.**

Plaintiffs anticipate that Chase will withhold many of the most important documents from each of its rolling productions based upon the bank examination privilege and the need to comply with OCC procedures. *Id.*, ¶¶ 28-29. Thus, even after Chase's June document production and August privilege log, the parties will need to go through OCC procedures, and possibly the Court's *in camera* review, before the documents are provided to Plaintiffs. *See In re Bankers Trust Co.*, 61 F.3d 465, 468, 471-72 (6th Cir. 1995); *see also Schrieber v. Soc'y for Sav. Bancorp Inc.*, 11 F.3d 217, 221 (D.C. Cir. 1993).

### E. Chase has refused to provide discovery on class-wide damages

Chase has made it clear that it *will not* produce the information Plaintiffs need to calculate class damages. Chase suggests that such discovery is premature, but it has offered no insight about how and when Plaintiffs can obtain that necessary discovery. Lowney Decl., ¶¶ 27, 32.

Admittedly, damages discovery will be more invasive and expensive than discovery focused on class certification and liability. Plaintiffs can litigate class certification and liability based upon documents from custodians, ESI searches from the post 2010 period, depositions, and other written discovery. Much of this discovery is well underway, albeit very slow. *Id.*, ¶¶ 2, 4, 12-14, 17-21, 27-31.

In contrast, quantifying class wide damages will require production of account-level information for each of the class members dating back to at least 2001, or further, depending upon when the overcharges began. *Id.*, ¶ 32. Plaintiffs experts would apply a formula to this account-level information, essentially unwinding the formula Chase used to overcharge servicemembers in the first place, and then applying the proper interest rates.[6] *Id.*, ¶ 29.

## LEGAL STANDARD

Under Fed. R. Civ. P. 16(b)(1)(4), a scheduling order "may be modified only for good cause and with the judge's consent." "The touchstone of 'good cause' under [Rule] 16(b) is *diligence*." *Huggins v. Roach*, 2016 U.S. Dist. LEXIS 127112 at *11, No. 5:15-CT-3002-BO (E.D.N.C. September 16, 2016) (emphasis original, internal citations omitted).

---

[6] Chase continues to take the absurd position that its discovery burdens are excessive, "particularly where Plaintiffs cannot even offer a calculation of their damages after eight months…" Lowney Decl., Exhibit 3, p. 3. Plaintiffs are unable to calculate damages precisely because Chase continues to withhold the information required for Plaintiffs to do so.

## ARGUMENT

**A. Good cause exists for modifying the schedule.**

Good cause exists for modifying the Scheduling Order in this instance. The current schedule is unworkable and would significantly prejudice Plaintiffs' ability to obtain justice for the tens of thousands of servicemembers in the class.

Diligence is shown by Plaintiffs' propounding their discovery requests at the very start of discovery—only weeks after the 26(f) conference. *Id*., ¶ 2. Chase's production of the responsive documents will take virtually the entire discovery period, if not longer. *Id*. Most of these delays can be traced to the complexity and breadth of this class action, the slow pace of Chase's production, and the expected delay in the production of several key documents caused by the OCC process. Plaintiffs allowed Chase the flexibility and time it purported to need in the reasonable expectation that the parties would work cooperatively to seek a schedule modification if that proved necessary. *Id*., ¶ 30. Chase's current intransigence is unreasonable.

**B. The proposed schedule modification is reasonable.**

Assuming that Chase follows through with its commitments, Plaintiffs are hopeful that a six month extension will allow for completion of fact discovery on liability and class certification. However, Chase has so far not met its deadlines. In the parties' latest meet and confer it promised to produce some important documents by the end of April—after six months of refusing to produce them—but it is now well into May and Chase has still not provided them. *Id*., ¶ 26.

After Chase produces documents and privilege logs in June and August, respectively, Plaintiffs will need to go through a lengthy OCC process. *Id*., ¶¶ 28-29. Plaintiffs conferred with the OCC and Chase to try to expedite the OCC process and expect to propose to the Court the same procedures that were successfully used in *Bank of America*, hopefully with a joint motion

8

like in *Bank of America. Id.* However, even such an order would not force the OCC to expedite its review of withheld documents for bank examination privilege.

Plaintiffs will also need to resolve outstanding discovery requests. As demonstrated by Plaintiffs' motion to compel, Chase issued objections to most of the key words used in Plaintiffs' discovery requests, frivolously arguing that it could not understand basic words like "audit." Chase has refused to withdraw a single one of these objections, but after two discovery conferences says that it will provide *certain responsive documents. Id.*, ¶¶ 26-27; Exhibit 3. Thus, until sometime in August, Plaintiffs cannot know whether Chase is withholding documents based upon its many improper objections. The proposed schedule allows such discovery motions after Plaintiffs learn whether the dispute is significant (e.g., impacting production).

Finally, after all of the key documents are obtained, Plaintiffs will need to analyze them and prepare for depositions. Based upon experience in *Bank of America*, Plaintiffs expect to receive many highly technical documents that will require expert assistance to decipher in preparation for deposition. *Id.*, ¶ 32. Depositions will also be time consuming, given the technical nature and number of anticipated depositions. *Id.*, ¶ 29.

**C.     The proposed modification to allow discovery phasing is reasonable.**

Whereas post-2010 corporate documents can be used for class certification and to establish liability, quantifying class damages will require account-level documents for each of the class members going back to approximately 2001. Chase has balked at providing such account-level discovery now and explains that discovery of pre-2010 documents is hindered by changes to data archiving systems. *Id.*, ¶ 14.

Rather than fighting over damages discovery now and seeking a longer extension of the discovery period, Plaintiffs propose to modify the discovery deadlines to apply only to liability

and class certification. This will allow the parties to focus their immediate attention on preparing for class certification and dispositive motions on liability, while deferring more onerous and contentious damages discovery. This is reasonable and less disruptive of the court's schedule than complete bifurcation of the case. *See e.g. F & G Scrolling Mouse LLC v. IBM Corp.*, 190 F.R.D. 385, 390, 1999 U.S. Dist. LEXIS 20186 (M.D.N.C. 1999) ("In between the extremes from simultaneous discovery to a stay in discovery, a court may stage discovery…").

Plaintiffs propose that the scheduling order adopt a deadline by which the parties attend a status conference with the Court to discuss damages discovery and file a Status Report. Plaintiffs are hopeful that by that time Chase may decide to proceed in a more cooperative approach to damages discovery, following the lead of Bank of America, thus allowing both parties to value the case and explore settlement opportunities.[7]

## **CONCLUSION**

This is an important case involving the illegal overcharging of tens of thousands of servicemembers on active duty by one of our Nation's largest banks. The complexity of the case, the size and number of Defendants, and the slowness of Chase's document production provides good cause for extending the schedule. The proposed order keeps the case moving while the parties figure out a way to proceed amicably with discovery into class damages.

---

[7] Alternative approaches could involve the appointment of a special master or proving class damages through traditional discovery; but this later process would be the most contentious and time consuming.

10

This the 12th day of May, 2017.

                                                        **SHANAHAN LAW GROUP, PLLC**

By: */s/ Brandon S. Neuman*
Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Christopher S. Battles, NCSB# 42682
128 E. Hargett Street, Third Floor
Raleigh, North Carolina 27601
Telephone: (919) 856-9494
Facsimile: (919) 856-9499
kieran@shanahanlawgroup.com
bneuman@shanahanlawgroup.com
cbattles@shanahanlawgroup.com

**SMITH & LOWNEY, PLLC**

By: */s/ Knoll D. Lowney*
Knoll D. Lowney, WSBA# 23457
Claire Tonry, WSBA # 44497
Meredith Crafton, WSBA# 46558
2317 E. John Street
Seattle, Washington 98112
Telephone: (206) 860-2883
Facsimile: (206) 860-4187
knoll@igc.org
clairet@igc.org
meredithc@igc.org

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Memorandum in Support of Motion to Modify Scheduling Order** has been electronically filed with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to the following:

>R. Scott Adams
>Spilman Thomas & Battle, PLLC
>110 Oakwood Drive, Suite 500
>Winston-Salem, NC 27103
>
>Alan E. Schoenfeld
>Wilmer Cutler Pickering Hale and Dorr LLP
>7 World Trade Center
>250 Greenwich Street
>New York, NY 10007

This the 12th day of May, 2017.

>By: */s/ Knoll D. Lowney*
>Knoll D. Lowney, WSBA# 23457
>2317 E. John Street
>Seattle, Washington 98112
>Telephone: (206) 860-2883
>Facsimile: (206) 860-4187