IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CASE NO. 5:16-cv-00298-BO

| | |
|---|---|
| GARY and ANNE CHILDRESS, RUSSELL and SUZANNAH HO, and MICHAEL CLIFFORD *on behalf of themselves and others similarly situated*, | )<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL** |
| JP MORGAN CHASE & CO., JP MORGAN CHASE BANK, N.A., CHASE BANK USA, N.A. and CHASE BANKCARD SERVICES, INC., | )<br>)<br>)<br>) |
| Defendants. | ) |

NOW COME Plaintiffs Gary and Anne Childress, Russell and Suzannah Ho, and Michael Clifford ("Plaintiffs"), by and through undersigned counsel, and, pursuant to Fed. R. Civ. P. 37 and LR 7.1(d), hereby submit the following Memorandum in Support of their Motion to Compel:

## I. INTRODUCTION & SUMMARY OF FACTS

This is a putative class action under the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3937, among other causes of action, on behalf of military families who were overcharged interest by Defendants ("Chase") while on active duty. DE 1 at ¶¶3-4. These overcharges were incremental, and embedded in complex calculations Chase applied to the accounts of service members and their spouses. *Id.* at ¶74. Thus, only Chase knows the nature of these calculations. However, Chase does admit that it overcharged at least 60,000 credit card accounts of active duty military servicemembers or their families, including Plaintiffs. *Lowney Decl.,* Ex. 1 at 13.

Since before 2010, JP Morgan Chase & Co. has had a "Corporate Audit group" that audits Chase's SCRA compliance. *Id.,* Ex. 3 at 4 n.2 Chase conducted several systematic analyses of military accounts dating back to at least 2005 to estimate the amount of interest overcharges and the number of overcharged servicemembers. *Id.,* Ex. 1 at 10-11. Plaintiffs' accounts were among those reviewed. *Id.* Thus, information concerning these reviews, and the actions Chase took in response to them, is highly relevant to this case. Chase undoubtedly has readily accessible data compilations and summary level reports from these reviews that it could use to provide detailed responses to the discovery requests Plaintiffs propounded over six months ago.

Instead of providing this key information, Chase has asserted spurious objections, improperly and unilaterally narrowed the scope of Plaintiffs' requests, and refused to provide complete answers that would address core issues in this case. Specifically, Chase has: (1) withheld responsive documents and information from before 2010; (2) withheld the details of SCRA

violations it identified and purported remedial payments; and (3) improperly excluded JP Morgan Chase & Co. and JP Morgan Chase Bank N.A. (hereafter the "Parent Companies") from its answers, among other deficiencies. In a belated show of good faith, Chase agreed to provide a small portion of these key documents by the end of April, 2017. *Id.*. Ex. 3 at 7. As of today, however, Chase has not provided the promised documents. *Id.* at ¶26. [1]

As a result, only Chase knows when its illegal practices began and whether they continue, how much the bank profited from their illegal overcharges, how it calculated purported remediation payments to military customers, and how high up the chain of command the unlawful scheme was known. Until Chase provide these key facts, which it refuses to do, Plaintiffs are hard pressed to move for class certification, determine the extent of liability, approximate class-wide damages, or engage in meaningful settlement negotiations.

Counsel for Plaintiffs certifies that there has been a good faith effort to resolve this discovery dispute prior to filing this motion. *Id.* at ¶26. Having exhausted that process, Plaintiffs now respectfully request that the Court compel Chase to produce the above-listed information.

This motion has a limited scope for the sake of efficiency. First, Plaintiffs are not seeking to compel production of account-specific documents for other class members or electronically stored information ("ESI") predating 2010. Plaintiffs' Motion to Modify the Case Schedule, filed herewith, proposes to defer such class-wide damages discovery. Second, Plaintiffs are waiting on further discussion with the Office of the Comptroller of the Currency ("OCC") and Chase before involving the Court in the process for production of documents Chase is withholding based on the potential application of the bank examination privilege (held by the OCC). Finally, Plaintiffs have

---

[1] To be clear, Chase have produced several thousands of pages of documents to Plaintiffs, mostly Plaintiffs' monthly account statements. *Id.*at ¶¶17-20. However, the vast majority of the documents produced so far are useless to Plaintiffs and will remain so until Chase provide complete answers to Plaintiffs' interrogatories and other key evidence showing the complex calculations behind their SCRA overcharges and purported remedial payments. *Id.*

3

to wait until August 2017, when Chase expect to complete its privilege log, to know whether Court intervention is necessary for items identified therein. *Id.* at ¶¶ 28-29.

## II. ARGUMENT

### A. <u>**Standards for discovery responses.**</u>

Parties are entitled to "discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Accordingly, pre-trial discovery is to be accorded broad and liberal treatment. *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co.*, Inc., 967 F.2d 980, 983 (4th Cir. 1992); *Benjamin v. Sparks*, No. 4:14-CV-186-D, 2017 U.S. Dist. LEXIS 63301, at *3 (E.D.N.C. Apr. 26, 2017).

In a putative class action, plaintiffs are entitled to discovery to determine the existence and maintenance of a class or set of subclasses. *See Carbone v. Zen 333 Inc.*, No. 2:16-cv-0108-DCN, 2016 U.S. Dist. LEXIS 176355 (D.S.C. Dec. 21, 2016) (citing with approval *Griffin v. Harley Davidson Credit Corp.*, No. 8:08-cv-466, 2010 U.S. Dist. LEXIS 2971 at *1 (D.S.C. Jan. 14, 2010) ("[O]ther district courts in this circuit have concluded that plaintiffs are 'generally entitled to pre-certification discovery to establish the record the court needs to determine whether the requirements for a class action suit have been met.'")); *Artis v. Deere & Co.,* 276 F.R.D. 348 (N.D. Cal. 2011) (rejecting defendant's argument that individualized information of putative class members is irrelevant to class certification).

A party resisting discovery bears the burden of making a particularized showing of specific facts why discovery should be denied. *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010); *Hall v. Sullivan*, 231 F.R.D. 468, 470 (D. Md. 2005).

4

Where the answer to an interrogatory may be determined by examining, auditing, compiling, or summarizing the responding party's business records *and* the burden of deriving the answer in such fashion will be substantially the same for either party, the responding party may answer by specifying in detail the records to be reviewed and providing access to those records. Fed. R. Civ. P. 33(d); *Minter v. Wells Fargo Bank, N.A.*, 286 F.R.D. 273, 278-79 (D. Md. 2012). Rule 33(d) may be used only if the interrogatory requires burdensome research into the party's business records, above and beyond referring to the records to answer the interrogatories. *Minter*, 286 F.R.D. at 278.

> **B.  Chase must supplement its interrogatory responses with information from 2001–2009 and provide non-ESI documents from that period.**

Chase refuses to provide information concerning 2001 through 2009 in response to Plaintiffs' interrogatories 2, 3, 4, 5, 6, and 11. *Lowney Decl.*, Ex. 1. Chase's objection that pre-2010 information is "not proportional to the needs of the case" is meritless. *Id.* at 2. The putative class encompasses servicemembers who were eligible for SCRA benefits on or after September 11, 2001 (the date that triggered a significant increase in active duty deployments and associated SCRA benefits). DE 1 at ¶¶ 1, 18. Chase's own recent review of SCRA violations and overcharges looked back to at least 2005. *Lowney Decl.,* Ex. 1 at 10. Plaintiffs were entitled to SCRA benefits from Chase dating back to at least Mr. Ho's 2006 call to active duty. DE 1, ¶ 12. Chase's unilateral January 1, 2010 cutoff does not reflect the needs of the case whatsoever.[2]

Instead, Chase's refusal to provide information concerning earlier years seems to be based on Chase's transition from one email system to another around late 2009, such that earlier emails

---

[2] In analyzing proportionality, the Court should also consider "the significance of the substantive issues, as measured in philosophic, social, or institutional terms." Fed. R. Civ P. 26, 2015 Committee Note. Here, the significance of the substantive issues tips decidedly in Plaintiffs' favor. Plaintiffs represent tens of thousands of military families who were denied the interest rate reductions Congress mandates so they could focus on serving their country on active duty. Chase is a sophisticated financial institution with ample resources to fully comply with its discovery obligations.

are archived. *Lowney Decl.*, Ex. 3 at 3. For that reason, Plaintiffs are not seeking to compel pre-2010 ESI at this time. However, Chase's archiving of older emails does not excuse them from their obligation to answer *interrogatories* to the best of their ability and to provide paper documents from the entire class period.

        **C.**      **<u>Chase has improperly withheld information about its SCRA violations and compliance audits.</u>**

Interrogatories 2 and 3 ask Chase to identify and state the findings of its SCRA compliance audits and identify and state the nature, cause, and duration of its SCRA violations since 2001. *Id.*, Ex. 1 at 5-6. Following a litany of spurious objections, including feigned confusion over what the word "audit" means, Chase answers merely that its Corporate Audit group has conducted SCRA audits since 2010, and "information concerning those audits can be acquired or compiled from documents that [Chase Bank USA] has agreed to produce." *Id.* This response utterly fails to satisfy Rule 33. To date, Chase has identified only four responsive documents, three of which are partially redacted, and the other documents "concerning" audits that were promised by the end of April have not been produced. *Id.*, ¶¶20, 26. Chase does not even suggest that it will ever produce documents from which Plaintiffs could discern the audits' findings or the nature, cause, and duration of known SCRA violations. Chase cannot use Rule 33(d) to make Plaintiffs try to re-create audits or piece together a history that Chase can much more easily describe in narrative.

        **D.**      **<u>Chase is improperly withholding the details of their purported "remedial" payments for charging excess interest in violation of the SCRA.</u>**

Chase's responses to interrogatories 4 and 7–10, regarding Chase's SCRA violations and responses thereto, are insufficiently detailed, conflicting, and improperly rely on future document production that, on its face, will not answer the questions posed. *See Lowney Decl.,* Ex. 1. The Court should order Chase to provide complete interrogatory responses.

6

It is helpful to take these interrogatories out of order. Interrogatories 8 and 9 ask Chase to detail any programs or initiatives since 2001 that it contends were designed to reimburse military customers for overcharges, and to detail the method used to determine the amount of any reimbursement payments. *Id.* at 10-13. Chase identified three payment programs since 2010, and then provided a description of only the most recent program carried out in 2016. *Id.* The answer leaves out critical details of this one program's complex analyses, and provides no details about the other two programs.

As a most stark example, Chase never indicates whether it paid military customers interest on overcharges to compensate for the time value of money and, if so, how such interest was calculated. This is important, as in *Childress v. Bank of America,* No. 5:15-cv-00231-BO (E.D.N.C., filed June 1, 2015) ("*Bank of America*"), a related SCRA lawsuit against Bank of America, interest calculations deprived class members of over $50 million in prejudgment interest to which they were legally entitled. *Id.,* ¶32.

Further, Chase vaguely asserts that its calculations included several "servicemember-favoring assumptions," but they identify "just two examples" of such assumptions. *Id*., Ex. 1 at 11. As Plaintiffs discovered in *Bank of America*, when a bank claims it made numerous "servicemember-favoring assumptions" but only discloses some, the other assumptions likely favored the bank. *Id.* at ¶32. Plaintiffs cannot meaningfully evaluate Chase's alleged remediation calculations without *all* of the variables and assumptions, and they are entitled to a complete answer under Rule 33.

Also problematic is that Chase asserts that in May 2016, "[f]or any customer amounts of $10 or more, [Chase Bank USA] provided the greater of $500 or three times the interest and fees assessed in excess of 6% ***net of any prior remediation amounts***," but it fails to explain how prior

7

remediation amounts were calculated, who received them, and what criteria was used to determine eligibility for prior amounts. *Id.*, Ex. 1 at 12 (emphasis added). By Chase's own account, it is important to understand the prior payments to make sense of the May 2016 payments, yet Chase refuses to provide that information. Chase does not even state whether some or all of the 60,000 accounts that were identified as overcharged in the 2011 account review are the same as the 60,000 accounts at issue in the 2015–2016 review. *Id.*

Chase's response to interrogatory 7 is similarly incoherent. Interrogatory 7 asks Chase to identify each payment made to refund military customers interest overcharges. *Id.* at 9. Chase responded by listing the total amounts paid to each named plaintiff in May 2016. In a belated showing of good faith, Chase has promised to provide a list of the "total amount" of the check Chase sent to each servicemember in May 2016, but this is not responsive to interrogatory 7, as it does not address Chase's earlier payments, and does not allow Plaintiffs to discern what amount Chase contends to have overcharged class members, much less how Chase estimated the overcharges. *Id.,* Ex. 3 at 8. It will be impossible for Plaintiffs to discern from a list of May 2016 check amounts what portion of each of the 60,000 checks Chase contend represents interest overcharged in violation of the SCRA and its proprietary SCRA program benefits.

Chase's response to interrogatory 4, which asks Chase to identify the military customers Chase overcharged in violation of the SCRA since 2001, suffers from similar problems. After months of refusing to provide *any* response to this request, Chase belatedly promised to provide the same list of May 2016 payments, with customer identifiers redacted. *Id.* at Ex. 3 at 7–8. If and when Plaintiffs receive this list, they will not be able to tell how many individuals Chase identified as having been overcharged in their 2015 review (because the same individual may have multiple accounts), how many additional individuals were overcharged (such as those identified in other

8

reviews), or to otherwise receive a full response to interrogatory 4. This information is highly relevant to class certification.

Finally, interrogatory 10 asks Chase to identify overcharges that have not been refunded to military customers, including purported remediation payment checks which have not been cashed. *Id.,* Ex.1 at 14. Chase had no trouble identifying the number of checks issued in May 2016 that had not been cashed as of December 2016, yet it refuses to identify the amount of those payments or other unpaid interest, claiming that such information is irrelevant. *Id.,* Ex. 3 at 8–9. The amount of excess interest Chase admits it charged military customers in violation of the SCRA and which Chase admits has not been repaid is patently relevant to this case; the Court should compel Chase to provide a complete response.

Notably, Chase does not contend that it does not have the information Plaintiffs seek. Indeed, such information would have been needed for Chase to calculate its May 2016 payments for each of the 60,000 accounts and associated tax reports to the IRS. The Court should order Chase to immediately produce this readily available compilation of key information.

### E.     **Chase must conduct a reasonable search for responsive paper records**.

Chase has not conducted a reasonable search for responsive paper records, instead focusing solely on ESI. *Lowney Decl., ¶25.* During the parties' meet and confer calls, Plaintiffs specifically requested Chase review paper records for documents that are responsive to requests for production 1, 6, 7, and 9, but Chase would not commit to doing so. *Id.* It is reasonable to expect that *as soon as Chase received the discovery requests,* it should have asked key employees to produce the responsive paper documents in their possession. This would efficiently identify many of the key documents that were important enough for individuals to print out and maintain in hard copy. Such good faith discovery would have allowed Plaintiffs to obtain many of the most important

9

documents many months ago. Chase's selective search excluding paper files is inappropriate. *See Selee Corp v. McDanel Advanced Ceramic Techs.*, No. 1:15-cv-00129-MR, 2016 U.S. Dist. LEXIS 117319 at *8-9 (W.D.N.C. August 31, 2016) ("companies responding to discovery [have a duty to] conduct a reasonable investigation, make reasonable inquiries of its employees, and fully respond to interrogatories and document requests." (internal punctuation and citations omitted)). The Court should order Chase to produce responsive documents (including pre-2010 documents) revealed by a reasonable search of its paper files.

> F. **The Court should order the Parent Companies to produce responsive information across all lines of business implicated in Defendants' systematic SCRA violations.**

Chase has flatly refused to review the Parent Companies' records for responsive documents, on the basis that the Parent Companies have "no customer facing operations and thus do[] not have responsive documents" and searching their records would not be proportional to the needs of the case. *Lowney Decl.*, Ex 2 at 3. After insisting for close to six months that the Parent Companies have no responsive documents, Chase produced documents showing that, in fact, Parent Companies have a well-defined and central role in administering Chase's SCRA programs across all lines of business, auditing compliance with the SCRA, and overseeing efforts to remediate SCRA violations. This is all spelled out in JP Morgan Chase & Co.'s SCRA "Firmwide Policy." *Id.*, Ex. 5. The Firmwide Policy shows that ████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

10

[REDACTED] *Id.* The Court should compel Parent Companies to review their records and produce such responsive documents to Plaintiffs.

In addition to the categories of policy and review documents identified in the Firmwide Policy which are responsive to Plaintiffs' requests, Parent Companies must produce documents concerning the 2015–2016 SCRA review of accounts other than credit card accounts (e.g., auto and student loans) and associated payments. Chase refuses to produce this information on the basis that Plaintiffs' accounts were all credit card accounts. However, the putative class is not limited to credit cards, and available information shows that the 2015–2016 program encompassed and treated similarly other consumer lines of business. Indeed, military customers with credit card, auto, and student debts received checks for each account and identical cover letters from Chase on the very same day in May 2016. *Lowney Decl.*, Ex. 6. Where the alleged illegal practice is common to plaintiffs and other class members, a defendant cannot avoid class-wide discovery on the basis of immaterial distinctions. *See, e.g.,* 5 Newberg & Conte, *Newberg on Class Actions,* § 24.25 at 24-105 (3d ed. 1992) (class representative's claims need not be identical or substantially identical to those of absent class members); *Bruno v. Quten Research Inst., LLC,* 280 F.R.D. 524, 530 (C.D. Cal. 2011) (vast weight of authority holds that class representatives may prosecute claims on behalf of absent class members who used other products with similar defects). The Court should compel Chase to produce responsive information across all lines of business with military customers.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court compel Chase to provide the information and documents requested herein without further undue delay.

This the 12th day of May, 2017.

                                      **SHANAHAN LAW GROUP, PLLC**

By:    */s/ Brandon S. Neuman*
        Kieran J. Shanahan, NCSB# 13329
        Brandon S. Neuman, NCSB# 33590
        Christopher S. Battles, NCSB# 42682
        128 E. Hargett Street, Third Floor
        Raleigh, North Carolina 27601
        Telephone: (919) 856-9494
        Facsimile: (919) 856-9499
        kieran@shanahanlawgroup.com
        bneuman@shanahanlawgroup.com
        cbattles@shanahanlawgroup.com


                                        **SMITH & LOWNEY, PLLC**

By:    */s/ Knoll D. Lowney*
        Knoll D. Lowney, WSBA# 23457
        2317 E. John Street
        Seattle, Washington 98112
        Telephone: (206) 860-2883
        Facsimile: (206) 860-4187
        knoll@smithandlowney.com

# CERTIFICATE OF SERVICE

  I hereby certify that the foregoing **Plaintiff's Memorandum in Support of Motion to Compel** has been electronically filed with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to the following:

    R. Scott Adams
    Spilman Thomas & Battle, PLLC
    110 Oakwood Drive, Suite 500
    Winston-Salem, NC 27103

    Alan E. Schoenfeld
    Wilmer Cutler Pickering Hale and Dorr LLP
    7 World Trade Center
    250 Greenwich Street
    New York, NY 10007

  This the 12th day of May, 2017.

      **SMITH & LOWNEY, PLLC**
      By: */s/ Knoll D. Lowney*
        Knoll D. Lowney, WSBA# 23457
        2317 E. John Street
        Seattle, Washington 98112
        Telephone: (206) 860-2883
        Facsimile: (206) 860-4187
        knoll@smithandlowney.com

      **SHANAHAN LAW GROUP, PLLC**
      By: */s/ Brandon S. Neuman*
        Kieran J. Shanahan, NCSB # 13329
        Brandon S. Neuman, NCSB # 33590
        Christopher S. Battles, NCSB # 42682
        128 E. Hargett Street, Third Floor
        Raleigh, North Carolina 27601
        Telephone: (919) 856-9494
        Facsimile: (919) 856-9499
        kieran@shanahanlawgroup.com
        bneuman@shanahanlawgroup.com
        cbattles@shanahanlawgroup.com