IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:16-CV-298-BO

GARY AND ANNE CHILDRESS,
RUSSELL AND SUZANNAH HO, and
MICHAEL CLIFFORD, on behalf of
themselves and others similarly situated,

    Plaintiffs,

  v.

JPMORGAN CHASE & CO., JPMORGAN
CHASE BANK, N.A., CHASE BANK USA,
N.A., and CHASE BANKCARD
SERVICES, INC.,

    Defendants.

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO <u>MODIFY SCHEDULING ORDER</u>**

# INTRODUCTION

Plaintiffs Gary and Anne Childress, Russell and Suzannah Ho, and Michael Clifford (collectively, "Plaintiffs") seek an extension of the ten-month fact discovery period by an additional six months, based on misrepresentations about the good-faith discovery efforts of Defendants and omissions of their own myriad failures to meet the minimum obligations that discovery imposes upon them. Most critically, Plaintiffs seek to impose an additional six months of discovery on Defendants in a case where Plaintiffs have yet to disclose whether or how they were injured. More specifically, Plaintiffs have not explained, even though their initial disclosures were due in November 2016, how the checks that they received from Chase Bank USA, N.A. ("CBUSA") and that they cashed in May 2016—before the lawsuit was filed—failed to fully compensate them for any damages they claim to have suffered. Ultimately, this is not surprising, because Plaintiffs have no damages. An extension of discovery by six additional months is unnecessary given Defendants' production schedule and would be severely disproportional to the needs of this case, where Plaintiffs cannot establish any damages whatsoever. Plaintiffs' motion to modify the scheduling order should be denied.

# ARGUMENT

### A. Defendants Have Worked to Meet Their Discovery Obligations in Good Faith

Much of Plaintiffs' motion is premised on a misrepresentation of Defendants' discovery efforts as unreasonably slow and obstreperous. Defendants *strongly* dispute Plaintiffs' mischaracterization of discovery efforts to date. The actual facts reveal a completely different

story.[1]  In fact, Defendants have at all times sought to proceed through discovery with the efficiency and speed demanded by the fact discovery schedule.  It is Plaintiffs who have delayed in raising objections or issues with Defendants' clearly-stated parameters for production, and Plaintiffs who have refused Defendants' proposals to ensure that discovery can be efficient, economical, and complete within the schedule set by this Court.  A recitation of the facts makes this clear.[2]

Document discovery commenced with the service of Plaintiffs' first set of requests for production of documents on October 5, 2016.  *See* Declaration of Alan E. Schoenfeld ("Decl.") Ex. A.  After requesting, and receiving, the same extension Plaintiffs sought for their own response, Defendants timely served objections and responses on Plaintiffs on December 7, 2016.[3]  *See* Decl. Ex. D.  Defendants also began document production within a week: Defendants produced nearly 6,500 pages of documents in productions on December 13 and December 19, 2016; 50 more pages on February 27, 2017; and 4,000 more pages on April 14, 2017.  *See* Decl. Exs. E, F, G, H.  (In addition, since Plaintiffs filed their motions to compel and to modify the schedule, Defendants produced an additional 7,300 pages, consistent with their prior commitment to produce responsive documents on a rolling basis.  *See* Decl. Ex. I.)

---

[1]  Consistent with the general approach they have taken in this case, Plaintiffs' motion is replete with unnecessary, untruthful, and unsupported invective—for example, accusing Defendants (with no basis) of engaging in "'gotcha' litigation tactics" and "intentional foot-dragging while feigning cooperation as a litigation tactic." Mem. 1, 3.  Defendants have repeatedly asked Plaintiffs to stop the name-calling and threats to which they have resorted, but Plaintiffs have persisted.  Defendants will not engage.

[2]  Much of this history is laid out in the first two pages of Defendants' April 21, 2017 letter to Plaintiffs, which they conspicuously excise from their submission to the Court.  There is no justification for stripping two pages from a nine-page letter, other than to mislead the Court about the relevant facts.

[3]  Defendants served document requests on Plaintiffs on October 18, 2016.  *See* Decl. Ex. B.  On October 26, 2016, Plaintiffs requested a 30-day extension to respond.  Defendants consented and asked for a reciprocal 30-day extension for their own responses.  *See* Decl. Ex. C.

- 2 -
Case 5:16-cv-00298-BO   Document 51   Filed 05/26/17   Page 3 of 13

Defendants collected, reviewed, and produced these documents pursuant to the responses and objections set forth in Defendants' December 2016 responses, in which Defendants clearly stated the parameters of what they would and would not produce. *See* Decl. Ex. D. Plaintiffs then waited until April 5, 2017—*four months*—to first raise a dispute with the parameters of Defendants' production set forth in the December 2016 responses and objections. *See* Decl. Ex. J at 1. Indeed, the parties had met and conferred six weeks earlier (on February 21, 2017) regarding other discovery matters, yet Plaintiffs raised no issues with Defendants' objections or responses to their requests for production of documents (other than the applicable time period). *See* Decl. Ex. K at 2-3. Plaintiffs should hardly be heard now, at this late date, to claim a need for an additional six months to accomplish what should, and could, easily have been completed had they only acted diligently.

Plaintiffs complain about the time it has taken, and will take, for Defendants to produce documents, but the complexity and time of the efforts required for Defendants' review and production should come as no surprise. To put it simply, the privilege issues in this case are significant. This is an action under the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3937—an area that is highly regulated, such that in-house lawyers are very involved in the review and discussion of the matters at issue. That normal high level of involvement is only amplified here, given that Plaintiffs' suit more specifically comes in the wake of a major SCRA regulatory action for the bank, which lasted for several years and dealt squarely with the issues at the heart of Plaintiffs' claims. As such, Plaintiffs' document requests have presented difficult issues concerning the application of attorney-client privilege, requiring careful and time-consuming, multi-level document review.

Plaintiffs' requests also have raised difficult issues regarding the bank examination privilege ("BEP").  The BEP protects communications between a bank regulator and a bank that would reveal the content of the regulator's supervisory efforts.  Here, as noted, Plaintiffs' case follows the culmination of years of Office of the Comptroller of the Currency ("OCC") supervisory efforts in a Consent Order.  Plaintiffs' chosen method of discovery has exacerbated the BEP difficulties here, given that they have squarely focused their requests on the types of documents most likely to raise BEP concerns.  For example, one of Plaintiffs' document requests asks for "all documents" related to Defendants' Consent Order with the OCC, sweeping a wide universe of documents into Defendants' review that are by definition likely (and at minimum, potentially) subject to BEP.  *See* Decl. Ex. A at 12.  Nonetheless, Defendants have attempted to comply with Plaintiffs' requests and respond in a manner that complies with their obligations under the Federal Rules of Civil Procedure, while maintaining the privileges upon which they are entitled to rely and protect.

Though it is Plaintiffs' chosen methods of discovery that exacerbate the BEP issues in this case, Plaintiffs argue for an extension of the discovery schedule in part based on the time it will take for the OCC to review BEP-designated documents to determine whether they can be produced.  But Plaintiffs neglect to mention that Defendants sought to expedite this review through a more efficient and economical process, having made a proposal on April 21, 2017. *See* Decl. Ex. J at 6-7.  Notwithstanding Defendants' good-faith efforts, and the OCC's expression of willingness to discuss the proposal, Plaintiffs rejected it, suggesting instead the most laborious and lengthy of processes.  *See* Decl. Ex. L.  Plaintiffs suggested that the OCC should review every document that Defendants withhold on the basis of the bank examination privilege, identify any documents over which the agency chooses to assert BEP, and state the

reason for doing so.  *See id.*  Plaintiffs cannot reasonably claim that the need for the unwieldy OCC review they demand is justification for extending the fact discovery period by six months.

Ultimately, notwithstanding the difficulties that the privilege issues in this case create for Defendants' document review and production, Defendants intend to complete their rolling production of documents responsive to Plaintiffs' requests in June, with privilege logs to be produced within 60 days of each production.  This is the very schedule to which *Plaintiffs agreed* in March, when the parties executed the ESI protocol.  *See* Dkt. No. 38.

Finally, Plaintiffs neglect to mention in their brief that the discovery extension Defendants refused was not the six-month extension Plaintiffs now present to the Court, but rather Plaintiffs' remarkable request to extend a ten-month fact discovery period by *twelve* months (*i.e.*, more than doubling it).  *See* Decl. Ex. M.  Plaintiffs also do not acknowledge that they made the request for a twelve-month extension before they had ever asked to meet and confer regarding Defendants' responses to their document requests (that is to say, before Defendants even knew that Plaintiffs were unsatisfied with the universe of documents that Defendants had agreed, in December 2016, to produce).  *See id.*

### B. Plaintiffs Have Not Conducted Discovery with Any Diligence

Plaintiffs attempt to contrast Defendants' supposed delay with their own dogged pursuit of discovery, but in reality, Plaintiffs have delayed.  Plaintiffs hang their hat on the fact that they submitted their discovery requests in October of last year, "only weeks after the 26(f) conference."  Mem. 8.  If the timing of initial discovery requests were enough to "show diligence," as Plaintiffs claim, then the parties would be in parity, as Defendants served their initial discovery requests in October as well.  *See* Decl. Ex. B.

Plaintiffs make much of the fact that across four productions Defendants have not yet produced certain categories of documents they claim (and Defendants dispute) are essential to

their case.  However, Plaintiffs themselves have made only one production, on March 10, 2017, nearly *five months* after Defendants served their document requests and three months after Defendants' first production.  *See* Decl. Ex. N.  Moreover, aside from an engagement letter with counsel, Plaintiffs have produced *no* documents for one of the servicemember plaintiffs, Mr. Clifford.[4]  And unlike Defendants, who have provided a timetable for the completion of their review and productions, Plaintiffs have offered no indication when (or if) they intend to produce responsive material for Mr. Clifford, nor have they explained their failure to do so to date.

Beyond Plaintiffs' dilatory approach to Defendants' document requests, Plaintiffs have shirked their discovery obligations in other ways as well.  For example, in their initial responses to Defendants' interrogatories, filed on December 16, 2016, Plaintiffs declined to offer separate answers for each individual plaintiff, despite the fact that Defendants are entitled to evaluate each plaintiff's claim (and suitability as class representative) individually.  *See* Decl. Ex. O. Further, Plaintiffs repeatedly answered the interrogatories with some variation of "allegations about this matter are stated in the Complaint," despite the fact that (1) allegations in a complaint (particularly one not verified under oath) are insufficient as interrogatory responses, *see, e.g.*, *King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 6 (D.D.C. 1987), and (2) the complaint actually did not contain allegations responsive to all the interrogatories in question—for example, regarding tour dates in response to Interrogatory No. 3 or the manner in which Plaintiffs notified Defendants of their active duty in response to Interrogatory No. 4, *see* Decl. Ex. O at 6-7.

When Defendants objected to these responses on December 23, 2016 (*i.e.*, one week after receiving the deficient responses), *see* Decl. Ex. P, Plaintiffs waited six weeks (until February 3,

---

[4]   Plaintiffs have also consistently refused to provide any information about Mr. Clifford's availability for a deposition.

2017) to provide supplemental responses, *see* Decl. Ex. Q—and notwithstanding that lengthy period, they still refused to provide individual responses on behalf of each Plaintiff. Following another letter from Defendants on February 14 regarding this and other remaining deficiencies, *see* Decl. Ex. R, Plaintiffs waited another month (until March 14, 2017) to file further supplemental responses, *see* Decl. Ex. S. And, after representing that they would provide the requisite individualized responses, Plaintiffs merely repeated the same "individualized" answer for each Plaintiff. *See id.*

Most troubling, however, is Plaintiffs' continued failure to provide Defendants with any useful computation of the damages they claim in this case. Under Federal Rule of Civil Procedure 26(a)(1)(A)(iii), Plaintiffs were required to include in their initial disclosures "a computation of each category of damages claimed." They failed to include this information in their disclosures, which were served on November 10, 2016. *See* Decl. Ex. T. In response, Defendants pointed out that all that was necessary to determine Plaintiffs' damages were account statements and knowledge of the servicemember Plaintiffs' tour dates, both of which Plaintiffs should possess and should have reviewed before leveling the assertions of the complaint against Defendants. *See* Decl. Ex. U. Plaintiffs, however, continued to refuse to provide this calculation. Indeed, in their February 2017 supplemental interrogatory responses, Plaintiffs claimed that this analysis of their damages—which, to reiterate, is required to be shared with Defendants by the Federal Rules of Civil Procedure—was protected work product. *See, e.g.*, Decl. Ex. Q at 11. Defendants long ago produced every document necessary for them to calculate their damages. Yet, despite the requirement that parties supplement their initial disclosures if the initial answers are incomplete, *see* Fed. R. Civ. P. 26(e), Plaintiffs still have not provided a quantification of their damages—six months after they were required to do so, a full

year after they first filed this complaint, and seven months into a ten-month fact discovery period.

Failure to provide this required information a full year after the filing of a case is troubling enough on its own.  *See, e.g.*, *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport*, 596 F.3d 357, 366-70 (6th Cir. 2010) (where plaintiff failed to provide adequate computation of damages and supporting documentation, district court was justified in excluding evidence of damages and granting summary judgment to defendant on that claim); *Sabol v. Allstate Prop. & Cas. Ins. Co.*, 309 F.R.D. 282, 285-87 (M.D. Pa. 2015) (where plaintiff failed to provide computation of damages in initial disclosures or provide evidence supporting its claim during discovery, plaintiff was barred from offering evidence at trial).  But Plaintiffs' steadfast refusal to tell Defendants what their damages are is particularly problematic for Defendants and the Court for two reasons:  First, Plaintiffs in fact have no damages, so there is little for the parties to fight about and even less cause for expenditure of this Court's resources.  Second, Plaintiffs' refusal to provide any information about the damages in this case makes it impossible for either Defendants or the Court to make any reasoned judgment as to the proportionality of the extended discovery period they seek here or the discovery Plaintiffs apparently intend to take during it.  *See Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 543 (N.D. Cal. 2009) ("[L]ack of prompt disclosure to Defendants about the scope and nature of Plaintiffs' damages case … threatens the fair and cost-effective exchange of relevant discovery.").  Each Plaintiff with an overcharged account received a check from CBUSA—which they cashed prior to filing this case.  Under any of the theories of liability Plaintiffs are pursuing, that pre-complaint payment more than fully compensated them for any overcharges.  Rule 26 permits discovery that is "proportional to the needs of the case."  Plaintiffs' attempts to subject Defendants to an

additional six months of discovery (with all its accompanying burdens and costs) can hardly be said to be proportional when they have no damages to remedy.

### C. Given These Facts, Plaintiffs' Proposed Extension of the Discovery Schedule Is Unnecessary

Plaintiffs are correct that "a scheduling order 'may be modified only for good cause and with the judge's consent.'" Mem. 7. Plaintiffs claim that there is good cause for a modification of the Court's scheduling order because they have been diligent, but they offer a revisionist history of this case that frames the timing of their initial requests for production of documents as "diligence" and their delay in every other facet of discovery as "allow[ing] Chase the flexibility and time it purported to need." Mem. 8.

"The good cause standard focuses 'on the diligence of the party seeking modification of the scheduling order' … [and] [t]he moving party bears the burden of showing that good cause exists for the amendment." *Howard v. College of the Albemarle & Kandi Deitemeyer*, No. 2:15-CV-00039, 2016 WL 4384658, at *6 (E.D.N.C. Aug. 16, 2016) (quoting *Neighbors Law Firm, P.C. v. Highland Capital Mgmt.*, No. 5:09-CV-352, 2011 WL 238605, at *2 (E.D.N.C. Jan. 24, 2011)). Plaintiffs have failed to demonstrate diligence in pursuing discovery, *see supra* Section B, and have not met their burden to show good cause. Therefore, the motion for modification of the scheduling order should be denied. *Id.* at *6-7 (denying request for extension of discovery period by movant who "did not act diligently"); *Huggins v. Roach*, No. 5:15-CT-3002, 2016 WL 5106984, at *4 (E.D.N.C. Sept. 19, 2016) (Boyle, J.) (denying motion to modify scheduling order where movant had failed to demonstrate reasonable diligence).

Since Plaintiffs filed their motion to modify the scheduling order, Defendants have produced an additional 7,300 pages of documents, including some of the documents Plaintiffs claim are key to their case. *See* Decl. Ex. I. (To be clear, this production was not made in

response to Plaintiffs' motions: These documents were reviewed and produced pursuant to the parties' agreed discovery parameters, on the rolling schedule to which Defendants long ago committed.) Defendants intend to complete their document production on schedule in June, which should leave six weeks for Plaintiffs to take depositions. That is a reasonable amount of time, and to date, Plaintiffs have not noticed a single deposition. While Defendants disagree that an extension is needed, in the interest of compromise, Defendants would be willing to agree to an additional two months of fact discovery. Plaintiffs' request for a six-month extension, however, is unwarranted.

## CONCLUSION

For the reasons above, the Court should deny Plaintiffs' motion to modify the scheduling order. In the alternative, Defendants would consent to a two-month extension of the discovery schedule.

Dated: May 26, 2017

Respectfully submitted,

/s/ Alan E. Schoenfeld

Alan E. Schoenfeld, NY State Bar No. 4500898
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, New York 10007
212-230-8800
alan.schoenfeld@wilmerhale.com

and

Nathan Atkinson, NC State Bar No. 27695
SPILMAN THOMAS & BATTLE, PLLC
110 Oakwood Drive, Suite 500
Winston-Salem, North Carolina 27103
336-631-1055

natkinson@spilmanlaw.com

*Attorneys for defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Chase Bank USA, N.A., and Chase Bankcard Services, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2017, the foregoing Memorandum in Opposition to Plaintiffs' Motion to Modify Scheduling Order has been electronically filed using the CM/ECF system, which will send notification of such filing to the following:

Kieran J. Shanahan
Shanahan Law Group, PLLC
128 E. Hargett Street, Third Floor
Raleigh, North Carolina 27601
919-856-9494
kieran@shanahanlawgroup.com

Knoll D. Lowney
Smith & Lowney, PLLC
2317 E. John Street
Seattle, Washington 98112
206-860-2883
knoll@igc.org

/s/ Alan E. Schoenfeld
Alan E. Schoenfeld