IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:16-CV-298-BO

GARY AND ANNE CHILDRESS,
RUSSELL AND SUZANNAH HO, and
MICHAEL CLIFFORD, on behalf of
themselves and others similarly situated,

    Plaintiffs,

    v.

JPMORGAN CHASE & CO., JPMORGAN
CHASE BANK, N.A., CHASE BANK USA,
N.A., and CHASE BANKCARD
SERVICES, INC.,

    Defendants.

## DEFENDANTS' MEMORANDUM
## IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

## INTRODUCTION

Plaintiffs Gary and Anne Childress, Russell and Suzannah Ho, and Michael Clifford (collectively, "Plaintiffs") sued JPMorgan Chase & Co. ("JPMC"), JPMorgan Chase Bank, N.A. ("JPMCB"), Chase Bank USA, N.A. ("CBUSA"), and Chase Bankcard Services, Inc. (collectively, "Defendants") under the Servicemembers Civil Relief Act ("SCRA"), after receiving and cashing remediation checks from CBUSA in May 2016 that compensated them at least three times the amount of any interest and/or fees they had been charged on their credit cards in excess of that allowed by 50 U.S.C. § 3937. Plaintiffs served discovery requests in October 2016. Since then, Defendants have worked diligently to review and produce information and documents: The process has been laborious, given that Plaintiffs' suit implicates not only a highly regulated and heavily lawyered area of compliance, but also follows a consent order entered into by CBUSA and its federal regulator, the Office of the Comptroller of the Currency ("OCC"), thus proliferating the privilege issues. Defendants have nonetheless endeavored to answer Plaintiffs' discovery requests in good faith, despite the fact that Plaintiffs have no damages (and thus no case), having been more than fully compensated by payments they received prior to filing the complaint. Meanwhile, Plaintiffs have shown little dispatch, waiting four months to meet and confer on Defendants' responses to their document requests and taking five months to produce *any* of their own documents—to take just two examples.[1]

Plaintiffs now move to compel (1) answers to their follow-up questions arising from sufficiently detailed interrogatory responses; (2) information that is irrelevant to liability or class certification and therefore not discoverable at this stage; (3) pre-2010 information that Plaintiffs' own actions demonstrate to be out of proportion to the needs of the case; (4) hardcopy files

---

[1] For a more detailed account of Plaintiffs' dilatoriness, see Defendants' Memorandum in Opposition to Plaintiffs' Motion to Modify the Scheduling Order.

CBUSA has agreed to produce; (5) "audit" documents that either have already been produced or are privileged; and (6) information from defendants that Plaintiffs have no standing to sue. Plaintiffs' motion to compel should be denied in its entirety.

## ARGUMENT

### A. CBUSA Has Given Sufficient Responses to Interrogatory Nos. 8 and 9

Plaintiffs move to compel additional responses to Interrogatory Nos. 8 and 9, *see* Mem. 6-8, even though CBUSA has already responded to each in sufficient detail.

Interrogatory No. 8 asks CBUSA to describe "any method or calculations … used to determine the amount of any payments … as described in paragraph 86 of the Complaint." *See* Declaration of Alan E. Schoenfeld ("Decl.") Ex. V at 9. Paragraph 86 in turn refers to payment checks sent in May 2016. Compl. ¶ 86; *see also id.* ¶¶ 39, 52, 63. Accordingly, in a detailed two-page response, CBUSA describes the calculation of the May 2016 remediation payments, including how eligible accounts were identified, how those accounts were reviewed, how the amount of payments was determined, and how the total dollar amount for each customer was calculated. *See* Decl. Ex. W at 10-12. On agreement of the parties, CBUSA supplemented this response with the total dollar amount paid in May 2016. *See* Decl. Ex. X at 11. Interrogatory No. 9 asks CBUSA to identify and describe "any program … designed to reimburse Military Customers for Excess Interest," including the "eligibility criteria," "number and identities of Military Customers receiving reimbursement or payment," and "total amount of payments." Decl. Ex. V at 10. In response, in addition to the May 2016 payments, CBUSA identified previous remediation payments by time period and number of checks issued (but did not provide personally identifiable information of unnamed classmembers). *See* Decl. Ex. W at 12-14.

Plaintiffs think these responses "leave[] out critical details of this … program's complex analyses." Mem. 7. Specifically, Plaintiffs want CBUSA to enumerate "*all* of the variables and

assumptions" underlying the remediation calculations, and details of "prior remediation amounts," among other voluminous information. *See id.* at 7-8. Plaintiffs also now insist on certain details they never previously requested—for example, they fault CBUSA for failing to "indicate[] whether it paid military customers interest on overcharges to compensate for the time value of money and, if so, how such interest was calculated," *id.* at 7, though they never asked for that information. *See* Decl. Ex. V at 9-10.

CBUSA's responses more than fulfill the bank's obligations and the purposes of Rules 26 and 33. The point of interrogatories is not to set out in excruciating detail the technical elements of a party's policies, procedures, and calculations. Rather, "'the point of interrogatories is to obtain a party's admissions and contentions under oath and to narrow issues in the case.'" *Herdlein Techs., Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 105 (W.D.N.C. 1993) (quoting *Life Music v. Broadcast Music*, 41 F.R.D. 16, 26 (S.D.N.Y. 1966)); *see also United States ex rel. Barko v. Halliburton Co.*, 2017 WL 1018309, at *28 (D.D.C. Mar. 14, 2017). Armed with CBUSA's interrogatory answers, Plaintiffs can obtain the detail they seek in depositions, "where follow up questions are easily asked, and details of the facts of a case are better discovered." *Cannata v. Catholic Diocese of Austin St. John Neumann Catholic Church*, 2011 WL 221692, at *1 (W.D. Tex. Jan. 21, 2011) ("[I]nterrogatories are not intended to take the place of depositions…."). Courts routinely reject the approach Plaintiffs seek to take here, *i.e.*, requiring an ever-more-lengthy-and-burdensome string of amended interrogatory responses. *See, e.g.*, *Barko*, 2017 WL 1018309, at *28; *Cannata*, 2011 WL 221692, at *1; *Rotoworks Int'l Ltd. v. Grassworks USA, LLC*, 2007 WL 2680556, at *3 (W.D. Ark. Sept. 7, 2007); *Schotthofer v. Hagstrom Const. Co.*, 23 F.R.D. 666, 668 (S.D. Ill. 1958).

### B.  CBUSA Has Adequately Responded to Interrogatory Nos. 4, 7, and 10

Plaintiffs also demand more detailed responses to Interrogatory Nos. 4, 7, and 10, *see* Mem. 8-9, but CBUSA has responded to those interrogatories to the full extent they seek relevant information, and then some.  Plaintiffs bear the burden of showing why the information they now seek is responsive to questions of liability or class certification, *see, e.g.*, *Velasquez-Monterrosa v. Mi Casita Restaurants*, 2015 WL 1964400, at *8 (E.D.N.C. May 1, 2015), and they fail entirely to do so.

Interrogatory No. 7 asks CBUSA to identify "each payment[] … made to Plaintiffs and other Military Customers" in May 2016 to remediate errors in SCRA calculations.  *See* Decl. Ex. V at 9.  As requested, CBUSA has identified the May 2016 payments issued to Plaintiffs, *see* Decl. Ex. W at 10, and specified what portion of those payments refunded interest and/or fees that may have been charged in excess of that allowed by 50 U.S.C. § 3937 and what portion was provided for inconvenience, *see* Decl. Ex. Y at 11-12.  CBUSA has also produced a spreadsheet showing each of the payments sent to servicemembers in May 2016 and provided information concerning the aggregate amount of those payments.  *See* Decl. Ex. Z.

Interrogatory No. 10 asks CBUSA to identify excess interest not yet repaid, including uncashed remediation checks.  Decl. Ex. V at 10.  In response to Interrogatory No. 10, CBUSA stated that it issued approximately 60,000 checks during its May 2016 remediation effort, of which approximately 48,000 had been cashed by December 2, 2016.  *See* Decl. Ex. W at 14-15.  CBUSA further explained that as of December 2, 2016, approximately 9,000 checks had been returned to CBUSA; approximately 4,500 checks were reissued; and of those 4,500 approximately 900 had been returned again.  *See id.*  CBUSA stated that it was not currently aware of any servicemember actually charged interest and/or fees exceeding that allowed by 50 U.S.C. § 3937 who had not been issued a check for at least that amount.  *See id.*

Interrogatory No. 4 asks CBUSA to "[i]dentify each and every Military Customer" charged excess interest or fees and to "state the total amount of excess charges to each." Decl. Ex. V at 8. Even though that information has no bearing on liability *or* class certification, CBUSA agreed to produce a list of all the payments made to individual servicemembers in May 2016. *See* Decl. Ex. J at 4-5. Plaintiffs now surprisingly claim that this information is "not responsive." Mem. 8. That was *Defendants'* position in the parties' meet and confer, but Plaintiffs insisted that the information concerning servicemember payments—with no personally identifying information accompanying it—was "important" and had proven "useful" in their negotiations with Bank of America in the parallel case. In a show of good faith, CBUSA agreed to produce the information Plaintiffs insisted upon; now Plaintiffs fault CBUSA for producing exactly what they requested.

Plaintiffs evidently will not be content short of a detailed explication of how each putative classmember's remediation check was calculated. But that information is irrelevant to liability or class certification, and wildly disproportionate to the needs of the case. *See, e.g.*, *Dziennik v. Sealift, Inc.*, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) (stating that courts have ordinarily denied discovery at the pre-certification stage into putative classmembers' information that does not help to "establish the appropriateness of certification"). Moreover, Plaintiffs have no entitlement to particularized information with respect to unnamed classmembers. *See, e.g.*, *Bakalar v. Vavra*, 619 F.3d 136, 147 (2d Cir. 2010); *Jenkins v. TJX Companies, Inc.*, 2011 WL 1563677, at *1-2 (E.D.N.Y. Apr. 25, 2011); *Walker v. Alta Colleges, Inc.*, 2010 WL 2710769, at *8-9 (W.D. Tex. July 6, 2010); *Bird Hotel Corp. v. Super 8 Motels, Inc.*, 2007 WL 404703, at *2-3 (D.S.D. Feb. 1, 2007).

### C. CBUSA Has Produced Information From the Time Period Relevant And Proportional to the Needs of the Case

Plaintiffs' discovery requests prescribe a blanket, arbitrary timeframe of September 11, 2001 to the present. But Plaintiffs offer no legitimate justification for seeking information dating back fifteen years. Ordinarily, parties tether the discovery period to the statute of limitations of their claims and make adjustments based on burden and proportionality. Plaintiffs have made no effort to do that here. Rather, they arbitrarily claim that September 11, 2001 marks the proper beginning point for discovery because it "triggered a significant increase in active duty deployments and associated SCRA benefits." Mem. 5. That has nothing to do with the time period for relevant and proportional discovery and ignores applicable statutes of limitations, even with the benefit of the tolling provision of the SCRA.

With Plaintiffs' consent, Defendants limited their search for electronically stored information to the period 2010 to the present. Plaintiffs now move to compel the production of pre-2010 information with respect to interrogatory responses and production of hardcopy files. That move is telling. When Defendants explained that accessing pre-2010 ESI would require restoring backup tapes and that courts routinely require the parties to share the costs of that restoration, Plaintiffs backed off the request to review pre-2010 ESI. *See* Decl. Ex. K at 2. The issue of cost sharing arose again in the parties' most recent meet-and-confer, but when Defendants proposed an equal cost-sharing arrangement, *see* Decl. Ex. J at 3, Plaintiffs ignored the suggestion and instead moved to compel, Mem. 5-6. In other words, Plaintiffs believe that pre-2010 information is proportional to the needs of the case—but only when Defendants bear the full burden of producing that information.

More importantly, to the extent Plaintiffs have sought relevant information pre-dating 2010, CBUSA has provided it. For instance, in support of their demand for pre-2010

interrogatory responses, Plaintiffs point out that "Chase's own recent review of SCRA violations and overcharges looked back to at least 2005." Mem. 5. That is correct, and CBUSA has answered interrogatories accordingly. *See, e.g.*, Decl. Ex. W at 10-12 (Interrogatory No. 8). Plaintiffs also note that Russell Ho was called to active duty as early as 2006. *See* Mem. 5. CBUSA has accordingly produced documents and information regarding Ho dating back as far as 2005. *See* Decl. Ex. K at 2. Plaintiffs ignore these nuances, and their blanket request for information going back to 2001 should be rejected.

### D. CBUSA Will Produce Hardcopy Documents

Plaintiffs move to compel Defendants to produce hardcopy documents because they understood Defendants to be noncommittal about doing so in discovery conferences. Mem. 9-10. That is not so; during the meet and confer, Defendants explained that they were uncertain whether hard copy documents had been collected alongside the more than one million electronic documents collected for running the parties' agreed search terms. CBUSA now confirms that such documents have been collected from the parties' agreed-upon custodians, and thus will be reviewed for production of responsive, non-privileged, non-protected documents. To further show good faith, CBUSA will also produce such documents from before 2010, if any exist.

### E. CBUSA Has Fulfilled Its Discovery Obligations with Respect to "Audits"

Plaintiffs next complain about CBUSA's production of audit-related information in response to Interrogatory Nos. 2 and 3, which request that CBUSA "identify," with certain specified detail, "all audits of your compliance with the SCRA or your Proprietary SCRA Program between January 2001 and the present," and further identify, again with certain specified detail, "each violation of the SCRA" found. *See* Decl. Ex. V at 7-8. As CBUSA has repeatedly explained to Plaintiffs, these interrogatories are impossible to answer on their face, in principal part because Plaintiffs explicitly define the term "audit" to mean any "audit, review, or

investigation by any party," and because the specific detail they demand (*e.g.*, the "cause" of each and every error) is unduly burdensome and overbroad. *See, e.g.*, Decl. Ex. V at 2, Ex. K at 2. With the operative term so defined, the interrogatories would require CBUSA to enumerate and describe in detail every single "review" that may have been performed by any CBUSA employee of any servicemember's benefits—for example, in responding to a servicemember's telephone inquiry about the application of benefits in a particular month.[2] *See id.* Rather than making any effort to narrow the request, Plaintiffs accuses CBUSA of "feign[ing] confusion" and insist that it answer the interrogatory as written. Mem. 6. The request should be denied.

Consistent with Rule 33(d), CBUSA directed Plaintiffs to certain responsive, non-privileged documents it agreed to produce that showed the plans for and results of audits performed by the bank's Corporate Audit group. *See* Decl. Ex. W at 5-7. This was a commonsense, reasonable, and proportional reading of a wildly overbroad request. Plaintiffs now appear to complain that CBUSA has produced *too few* documents in response to Interrogatory Nos. 2 and 3. But it should come as no surprise that self-critical reviews of compliance with a federal statute were conducted at the direction of counsel and are accordingly privileged or otherwise protected from disclosure. Documents responsive to Interrogatory Nos. 2 and 3 but withheld on that basis will be logged on CBUSA's privilege log, and the request to compel production of them, before the privilege is even asserted, should be denied.

### F. Plaintiffs May Not Seek Discovery From JPMC or JPMCB

Finally, Plaintiffs insist that they are entitled to broad-ranging discovery from two entities that have no relevance to their claims or the claims of any class Plaintiffs could purport to

---

[2] Some context may be useful here. Because the SCRA allows servicemembers to claim SCRA benefits after the start of their military service, *see* 50 U.S.C. § 3937(b)(1), CBUSA frequently had to apply SCRA benefits to servicemember accounts retroactively. Any review of an account for application of these retroactive benefits—which is part and parcel of the SCRA benefits process—would be responsive to Plaintiffs' interrogatory.

represent. Plaintiffs' only SCRA-eligible accounts were credit cards issued by CBUSA. JPMCB is a separately chartered national bank, which holds retail deposit and checking accounts, and issues mortgages, student loans, and auto loans. JPMC is a bank holding company, and the common, indirect parent of CBUSA and of JPMCB. Plaintiffs—mischaracterizing both JPMCB and JPMC as CBUSA's "parent companies"—insist that their dealings with CBUSA entitle them to discovery from affiliated entities. The law is dead against them.

To meet Article III standing requirements, "[i]n a multi-defendant action or class action, the named Plaintiffs must establish that they have been harmed by *each* of the defendants." *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 996 (D. Md. 2002) (emphasis added), *aff'd*, 92 F. App'x 933 (4th Cir. 2004). Even assuming Plaintiffs were to prevail on their claims, no injury could be traced to either JPMC or JPMCB, and neither entity could redress them. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 61, 65-66 (2d Cir. 2012) (in multi-defendant case, plaintiff lacks "Article III standing to sue the non-injurious defendants"). Plaintiffs have thus failed to establish standing, and the court lacks subject matter jurisdiction to compel discovery against them. *Cf. Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 895-96 (8th Cir. 2014) (named plaintiffs alleging charging and collection of improper fees on loans had no standing to sue defendants who never personally serviced or were assigned the named borrowers' loans).

That rule applies will full force in class actions. *See also Mahon*, 683 F.3d at 61, 66 (named plaintiff alleging overcharges on insurance premiums lacked standing to sue insurance company affiliates from whom she did not purchase insurance); *Byrd v. Aaron's, Inc.*, 14 F. Supp. 3d 667, 680-83 (W.D. Pa. 2014) (named plaintiffs lacked standing to sue franchisees with whom plaintiffs had no contractual relationship and by whom plaintiffs had not been harmed); *Akaosugi v. Benihana Nat'l Corp.*, 2011 WL 5444265, at *1-3 (N.D. Cal. Nov. 9, 2011) (named

plaintiffs lacked standing to sue defendant's subsidiaries because they could be linked only to the parent corporation and had never been employed by the subsidiaries); *Miller*, 224 F. Supp. 2d at 995-96 (named plaintiffs lacked standing to sue defendants who did not hold their notes or service their loans). As the Supreme Court has long instructed, that Plaintiffs brought their suit as a putative class action "adds nothing to the question of standing, for even named Plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). Rather, as the Fourth Circuit emphasized just this month, "[i]n a class action matter, we analyze standing based on the allegations of personal injury made by the named plaintiff. Without a sufficient allegation of harm to the named plaintiff in particular, he cannot meet his burden of establishing standing." *Dreher v. Experian Info. Sols., Inc.*, __ F.3d __, 2017 WL 1948916, at *3 (4th Cir. 2017). Because none of the Plaintiffs has standing to sue JPMC or JPMCB, none can seek discovery in the service of claims brought on behalf of other unnamed putative classmembers.

Nor does it matter that CBUSA is affiliated with or may have shared policies with JPMC and JPMCB. "[C]ommon ownership" and "shar[ing] common practices and policies" cannot "provide[] the basis for overriding the long-standing requirement that a plaintiff's injury be 'traceable to the challenged action of the defendant.'" *Popoola v. MD-Individual Practice Ass'n, Inc.*, 230 F.R.D. 424, 431-32 (D. Md. 2005) (citation omitted).

## CONCLUSION

For the reasons above, the Court should deny Plaintiffs' motion to compel in its entirety.

Dated: May 26, 2017                     Respectfully submitted,

/s/ Alan E. Schoenfeld

Alan E. Schoenfeld, NY State Bar No. 4500898
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, New York 10007
212-230-8800
alan.schoenfeld@wilmerhale.com

and

Nathan Atkinson, NC State Bar No. 27695
SPILMAN THOMAS & BATTLE, PLLC
110 Oakwood Drive, Suite 500
Winston-Salem, North Carolina 27103
336-631-1055
natkinson@spilmanlaw.com

*Attorneys for defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Chase Bank USA, N.A., and Chase Bankcard Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2017, the foregoing Memorandum in Opposition to Plaintiffs' Motion to Compel has been electronically filed using the CM/ECF system, which will send notification of such filing to the following:

Kieran J. Shanahan
Shanahan Law Group, PLLC
128 E. Hargett Street, Third Floor
Raleigh, North Carolina 27601
919-856-9494
kieran@shanahanlawgroup.com

Knoll D. Lowney
Smith & Lowney, PLLC
2317 E. John Street
Seattle, Washington 98112
206-860-2883
knoll@igc.org

/s/ Alan E. Schoenfeld
Alan E. Schoenfeld