IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-298-BO

GARY and ANNE CHILDRESS, *et al.*,      )
                                        )
                    Plaintiffs,         )
                                        )
v.                                      )        O R D E R
                                        )
JPMORGAN CHASE & CO., *et al.*,         )
                                        )
                    Defendants.         )


This cause comes before the Court on plaintiffs' motion to certify class and appoint class

counsel as well as defendants' motions to exclude plaintiffs' expert testimony and evidence of

damages. The appropriate responses and replies have been filed, and a hearing on the matters was

held before the undersigned on May 28, 2019, at Raleigh, North Carolina. In this posture the

motions are ripe for ruling and, for the reasons that follow, the motion to certify class is granted in

part, the motion to exclude the testimony of Arthur Olsen is denied, the motion to exclude the

testimony of Jonathan Shefftz is granted, and the motion to exclude damages evidence is denied

without prejudice.

## BACKGROUND

Plaintiffs Gary and Ann Childress, Russell and Suzannah Ho, and Michael Clifford, filed

this case on behalf of themselves and others similarly situated alleging claims against defendants

for violations of the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. §§ 3901 *et seq.*, breach

of contract, violation of the Truth in Lending Act, 15 U.S.C. § 1637(b), negligence, negligent

misrepresentation, violation of the Delaware Consumer Fraud Act, Del. Code Ann. Tit. 6 § 2511,

*et seq.*, violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat.

§ 75-1.1, *et seq.,* and breach of fiduciary duty. In addition to damages, plaintiffs seek a constructive trust and an accounting. [DE 1].

The SCRA requires that all debts incurred by members of the armed services before being called to active duty are reduced to a 6% interest rate from the date of deployment through the period of active duty, and that all financial institutions must forgive interest above the rate of 6%. *Id.* ¶ 1. Plaintiffs allege that defendants, JP Morgan Chase & Co., JP Morgan Chase Bank, N.A., Chase Bank USA, and Chase BankCard Services (collectively referred to herein as Chase), offered active duty military members more generous benefits than those required by the SCRA. *Id.* ¶ 2. Plaintiffs allege that, despite the requirements of the SCRA and its own beneficial contractual terms with active-duty customers, Chase charged an illegally high interest rate and improper fees on the debts of thousands of servicemembers, allowed these unlawful interest charges to improperly inflate servicemembers' principal balances, and then charged compound interest on these inflated balances. *Id.* ¶ 3. Plaintiffs then allege that Chase concealed its SCRA violations from the thousands of military families impacted. Plaintiffs and others did not discover the violations until 2016 when Chase sent misleading correspondence and checks to some military customers. *Id.* ¶ 4.

On September 18, 2013, Chase Bank USA, JP Morgan Chase Bank, and JPMorgan Bank and Trust Company entered into a consent order with the Office of the Comptroller of the Currency (OCC). [DE 196] Delaney Decl. ¶ 14. The consent order concerned Chase's discovery that it had not implemented effective controls of its SCRA benefits process, and Chase self-reported this issue to the OCC. [DE 195 at 12]. Chase contends that the consent order was designed to remediate any customers potentially affected by Chase's ineffective SCRA controls. *Id.* The remediation was designed to be overinclusive and to minimize the risk that SCRA-eligible customers would be excluded. Delaney Decl. ¶ 16. For those accounts identified, Chase identified the amount of

interest charged over 6% and any eligible fees assessed. *Id.* ¶ 29. For any amount of remediation that was $10 or more, Chase "provided the greater of $500 or three times the total remediation amount, net (after trebling) of any prior correction credits it had granted the servicemember." *Id.* ¶ 30. The consent order covered the period of January 1, 2005, through September 18, 2013. *Id.* ¶ 14.

On May 6, 2016, Chase Bank USA, with whom he maintained accounts, mailed plaintiff Gary Childress a check for $6,899, in remediation funds. *Id.* ¶ 47. The check was accompanied by a letter which stated

> We're writing to apologize because we may have charged you interest and/or fees incorrectly when you may have been eligible for Servicemember's Civil Relief Act benefits or protections. . . . We're refunding you the interest and/or fees, plus an additional amount for that inconvenience.

*Id.* Gary Childress deposited the check on or about May 16, 2016. *Id.*

Chase Bank USA calculated a remediation amount for plaintiff Russell Ho of $570.00, and mailed him a check for the same with a substantially similar letter as above on May 13, 2016. Russell Ho deposited the check on May 27, 2016. *Id.* ¶ 69. After determining that plaintiff Michael Clifford had previously been fully compensated for any overcharges by prior remediations, Chase Bank USA calculated a remediation amount of $1,044.00 meant only to compensate Clifford for any inconvenience that the prior overcharges had caused. *Id.* ¶ 98. Chase Bank USA mailed plaintiff Clifford a check for that amount along with a substantially similar letter as above, with the clarification that the amount enclosed was an inconvenience payment, on May 6, 2016. Clifford deposited the check on May 17, 2016. *Id.* ¶ 99.

Plaintiffs seek to define the class as follows:

> All persons who, at any time on or after September 11, 2001 (the "Class Period"), received reduced interest and/or fee benefits from Defendants on a credit card obligation or account because of an obligor's military service, but excluding persons who have executed a release of the rights claimed in this action.

[DE 229; 231]. Plaintiffs further seek appointment of plaintiffs Gary Childress, Russell Ho, and Michael Clifford as class representatives. *Id.* Plaintiffs have clarified that the class will be limited to credit card holders whose claims concern only defendant Chase Bank USA, N.A. [DE 229 at 4-5]. Plaintiffs have further clarified that their claims proceed against Chase for its own conduct and not for those of predecessor banks. *Id.* at 5. Finally, plaintiffs seek appointment of the law firms of Shanahan McDougal, Smith and Lowney, and Keller Rohrback as class counsel. *Id.*

In support of their motion to certify class, plaintiffs have proffered the opinions of two experts, Arthur Olsen and Jonathan Shefftz, which defendants seek to exclude under Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 37. Defendants further seek to exclude any evidence of damages offered by plaintiffs in connection with any motion or at trial for failure to comply with Federal Rule of Civil Procedure 26(a)(1)(A)(iii).

DISCUSSION

I.    Motions to exclude expert testimony.

At the outset, the Court notes that there is no controlling precedent which dictates whether to conduct a *Daubert* analysis at the class certification stage or how focused or full that analysis should be. *See, generally,* 3 Newberg on Class Actions § 7:24 (5th ed. 2014). The Court is persuaded by authorities which have concluded that where a movant has proffered expert testimony in support of its motion for class certification, and such testimony is critical to the issue of class certification, a full *Daubert* inquiry is appropriate. *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015); *see also Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 295 (D.D.C. 2018); *Souter v. Equifax Info. Servs. LLC*, 299 F.R.D. 126, 131 (E.D. Va. 2014).

Rule 702 of the Federal Rules of Evidence allows a qualified witness to offer an expert opinion if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)-(d). The offering party bears the burden of demonstrating by a preponderance of the evidence that the expert testimony it seeks to introduce meets the requirements of Fed. R. Evid. 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n.10 (1993). The court must make a preliminary assessment as to whether the proposed expert's reasoning and methodology is scientifically valid and whether such reasoning and methodology may be appropriately applied to the facts that are at issue. *Id.* at 592. The primary concern for a court is whether the proposed expert testimony is reliable and relevant. *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 637 (4th Cir. 2018). In making such determination, a court is not bound by a definitive list and may consider a wide variety of factors, including testing, error rates, and acceptability in the relevant community. *Daubert*, 50 U.S. at 593; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

A. Testimony of Arthur Olsen.

Arthur Olsen is an information technology consultant and has offered an expert opinion on the acertainability of the putative class and the calculation of potential class members' damages. Olsen is the principal of an information technology (IT) firm and has over twenty years of professional IT experience; Olsen specializes in the areas of data analysis, database development, and database administration support. [DE 175] Olsen Decl. ¶ 2. Olsen has litigation experience in which he has analyzed historical bank data from over thirty U.S. banks in order to determine

whether damaged class members could be ascertained and to calculate individual damages from those class members. *Id.* ¶6.

Chase's primary challenges to Olsen's testimony are that it is not grounded in fact and that it relies on insufficient assumptions. For example, Olsen opines that the class is readily identifiable based upon Chase's data, specifically the data that Chase used to generate customers who may qualify for its OCC-approved remediation. As to class members outside the remediation period, Olsen opines that they can be identified because Chase provided them with military benefits, and Chase maintains a database that codes borrowers based upon the membership in its SCRA program. *Id.* ¶¶ 12-13. Olsen further opines that the calculation of class damages can be accomplished using data available to Chase, and that an algorithm can be developed to accomplish this objective. *Id.* ¶¶ 14-15.

Chase objects to Olsen's opinions because he does not identify specific data on which he will rely, but rather relies somewhat broadly on "data available to Chase." While such an objection may be appropriate in other circumstances, Olsen's declaration is clear that, as in other litigation involving large banks, including litigation involving JP Morgan Chase Bank, Olsen has been and would here be able to use customer and account information that Chase maintains in order to accurately ascertain the class and calculate class damages. While Chase makes much of Olsen's reliance on Chase's own calculations and formulations for its remediation payments, arguing that the parameters for remediation qualification were different from the parameters which would be used to identify class members or calculate class damages here, it is difficult to understand how if Chase could utilize an algorithm and data searches to determine which of its customers should be remediated, Olsen could not, using the same and possibly additional data, perform similar calculations. *See* [DE 207] Olsen Dep. at 90-91. It cannot be seriously disputed that Chase knows

6

who its customers are and which are members of its SCRA program. Chase further has access to account information, including the interest rates that it has been charging.

Additionally, what constrains Olsen's expert opinion at this stage is the subject of discovery disputes between the parties. What is before the Court today, however, is not whether Olsen's damages calculation is accurate, but whether his expert opinion that he will be able to ascertain the class and calculate class damages is sufficiently relevant and reliable. *See* [DE 207] Olsen Dep. at 83 ("My role is to say . . . this type of data exist, and it can be used. I can use it, but I'll need some further information about exactly how this data should be used."). The Court finds that it is. Olsen has conducted similar analyses in other cases and, when permitted access to the relevant data, the Court persuaded that he can do so here. The Court is mindful of the limited extent of Olsen's current opinion – that he believes that the data exist and that he can use the data to determine the members of the putative class and the calculation of class damages. Of course, Chase may challenge any future opinion Olsen renders as to actual class members or damages when the case is ready for trial, but at this stage the Court will not exclude his testimony.

B. Testimony of Jonathan Shefftz.

Jonathan Shefftz is an independent consultant who focuses on the application of financial economics to the analysis of individuals, businesses, and municipalities. [DE 176] Shefftz Decl. ¶ 3. He has been qualified as an expert a number of times in United States District Court. *Id.* ¶ 4. Here, he opines that plaintiffs Gary and Anne Childress suffered post-remediation period damages in the form of overcharges and excess tax liability. *Id.* ¶ 5. In order to reach this conclusion Shefftz relied on the analysis provided by Chase's expert Jennifer McCabe. In essence, Shefftz reviewed McCabe's analysis and performed simple arithmetical calculations to determine that the

Childresses incurred damages after Chase had provided them with a remediation check. *See* [DE 212] Shefftz Dep. at 93.

Although plaintiffs oppose excluding Shefftz's testimony, they concede that "all of the same conclusions reached by Mr. Shefftz could be reached by the Court without any expert assistance . . .." [DE 228 at 6]. Shefftz's declaration does not offer any technical or specialized expertise that will assist the Court in making its determination as to whether plaintiffs have satisfied the burden under Fed. R. Civ. P. 23 to certify a class. *See McCall v. Skyland Grain LLC*, No. 08-CV-01128PABBNB, 2010 WL 1435369, at *3 (D. Colo. Apr. 9, 2010) (conducting simple arithmetic does not provide assistance under Rule 702). Accordingly, the motion to exclude Shefftz's testimony at this stage is granted.

II.     Motion to exclude damages evidence.

Chase seeks to exclude any evidence of damages by plaintiffs under Fed. R. Civ. P. 37(c)(1) for plaintiffs' failure to provide a computation of damages in violation of Fed. R. Civ. P. 26(a)(1)(A)(iii). [DE 213]. On February 5, 2018, the Court denied a similar motion by defendants after a hearing on the matter. [DE 212]. The Court further ordered that the motion may be re-filed a the close of damages discovery. *Id.* Damages discovery was ordered to commence after a status conference and joint status report to establish a damages discovery plan, which is to take place after the close of liability and class certification discovery. *Id.* The case was then stayed for a period of 180 days to permit the parties to engage in mediation, and the deadlines have been extended for a similar period. *See* [DE 157 & 163]. The Court has not been apprised that a damages discovery plan has been filed. Accordingly, it finds Chase's current motion to exclude damages evidence to be premature and denies it without prejudice.

III.    Motion to certify class and appoint class counsel.

Rule 23 of the Federal Rules of Civil Procedure provides that certification of a class is appropriate if the following prerequisites are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed R. Civ. P. 23(a).[1] If the prerequisites have been satisfied, the parties seeking class certification must also demonstrate that the action falls within a category of Rule 23(b). *See Haywood v. Barnes*, 109 F.R.D. 568, 575 (E.D.N.C. 1986).

The party seeking class certification bears the burden of proof. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006). A court's inquiry into whether the Rule 23(a) prerequisites have been satisfied must be rigorous, but it does not entail a "free-ranging merits inquiry at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). A party must also satisfy the Rule 23(b) provision with evidentiary proof, and may not rely on the pleadings alone. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). In addition to the Rule 23 express requirements, the Fourth Circuit has implicitly recognized a requirement that the class be ascertainable or readily identifiable. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).

A.    The class is ascertainable beginning January 1, 2005.

A plaintiff need not have identified every class member at the time of certification, but a court must be able to readily identify the members of a class using objective criteria. *EQT Prod.*,

---

[1] These requirements are generally referred to as the numerosity, commonality, typicality, and adequacy-of-representation requirements.

764 F.3d at 358. The inquiry focuses on whether individualized fact-finding would be required to determine membership in the class, or whether objective criteria may be used to readily identify class members. *Id.*

Here, plaintiffs' proposed class is limited by objective criteria such as those who received reduced interest and/or fee benefits because of military service. Chase, a sophisticated corporation, maintains customer records and has previously identified its SCRA-eligible customers when it engaged in its prior remediation. *See* [DE 196] Delaney Decl. at ¶ 17. Moreover, that some Chase customers who might be identified as members of the class may not have suffered injury is insufficient to preclude class certification. *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 380 (7th Cir. 2015).

However, plaintiffs have not sufficiently demonstrated that they can identify potential class members for the period of September 11, 2001, to January 1, 2005, when Chase's voluntary remediation period began. Plaintiffs' expert testified that for the period between 2001 and 2005, should the appropriate data exist for that time period, the same analysis could be done for those customers and transactions. [DE 207] Olsen Dep. at 48-49. Chase conducted its remediation analysis for the period beginning January 1, 2005, and thus it is plain that the data exist from at least that time period going forward. This is supported by the testimony of plaintiffs' expert. The dispute about the availability of the appropriate data existing for the period between September 11, 2001, and the beginning of the remediation period renders this portion of plaintiffs' proposed class too speculative. Accordingly, because plaintiffs have not satisfied their burden to show that the class is readily ascertainable from September 11, 2001 to December 31, 2004, the Court will

certify the class beginning January 1, 2005.[2] The remainder of the Court's analysis bears this revised period in mind.

B. The Rule 23(a) prerequisites have been satisfied.[3]

(i) Numerosity.

There is no specific number required to maintain a class action. *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984). Plaintiffs have plainly satisfied the numerosity requirement, as they contend that more than 100,000 accounts may have been charged interest and/or fees incorrectly.

(ii) Commonality.

A finding of commonality requires a class plaintiff to show that the class members' claims "depend upon a common contention capable of classwide resolution." *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 113 (4th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In other words, a class plaintiff must be able to show not just that the complaint raises common questions as to the class members, but that the litigation will "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores*, 564 U.S. at 350 (citation and emphasis omitted). A single common question, or answer, is sufficient to satisfy the commonality requirement. *Id.* at 359.

First, where there are consumer claims based upon the issuance of form letters, such claims are "well-suited to disposal by class action." *Woodard v. Online Info. Servs.*, 191 F.R.D. 502, 505 (E.D.N.C. 2000). Class action resolution is further appropriate where claims are based on form

---

[2] If at a future date the parties agree or the Court finds that the class should be expanded, it will consider a motion to amend the class definition.

[3] Chase contends that plaintiffs have failed to satisfy the Rule 23(a) requirements, focusing its arguments on the requirements of typicality and adequacy. Because the Court is charged with making a rigorous inquiry, it will consider whether each of the Rule 23(a) requirements have been satisfied.

contracts and firmwide policies. *See, e.g., Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004). Here, Chase sent letters to plaintiffs Gary Childress, Russell Ho, and Michael Clifford regarding their calculated remediation amounts for possible incorrect interest or fee charges, and, based upon Chase's evidence of its remediation program, much of the class will have received similar letters regarding any remediation amounts paid. Plaintiffs have proffered JPMorgan Chase & Co.'s firmwide Servicemembers Civil Relief Act Policy, [DE 174-14], which plaintiffs contend was promised to Chase customers when they enrolled in the SCRA program. *See* [DE 174-9,10] (SCRA qualifying account letters). These terms included a maximum interest rate of 4% for the applicable active duty period. Compl. ¶ 111.

Whether or not Chase complied with the SCRA and its own SCRA policy and terms for its servicemember customers are common questions of law and fact. Additionally, whether or not Chase's remediation payments should be considered as an offset to certain class-members' recovery is again a common question.[4] *See Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010) (potential for individualized damages calculation does not defeat suitability for class certification). Plaintiffs have satisfied the commonality requirement.

(iii) Typicality.

Typicality requires a showing that the "representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). Plaintiffs Gary Childress, Russell Ho, and Michael Clifton's claims are sufficiently typical of the class so as to be appropriate to represent the absent class members. Although Chase argues these proposed-named plaintiffs were "more than fully compensated" by Chase's voluntary remediation,

---

[4] The Court makes no determination at this stage as to whether the remediation payments may appropriately be considered offset.

[DE 195 at 11], as has been advanced by plaintiffs from the inception of this action, whether the named plaintiffs have been *fully* compensated is an issue that remains to be determined. The proposed-named plaintiffs are certainly typical of every servicemember Chase customer who received an "inconvenience" payment from Chase as a part of its OCC settlement. Moreover, typicality does not require that the class representative and class members have identical claims; the question is whether any variation in claims "strikes at the heart of the respective causes of action[.]" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006).

The Court finds that any variation in the claims presented does not strike at the heart of the causes of action advanced by plaintiffs. This class question concerns whether Chase overcharged interest and fees to servicemembers in violation of the SCRA and its own contractual terms with its credit card holders. Each of the proposed named-plaintiffs are servicemembers and credit card holders who allege that they were overcharged interest and fees in violation of the SCRA, their contract terms, or both. Their claims are sufficiently typical and plaintiffs have demonstrated the requisite typicality.

(iv) Adequacy of representation.

Adequacy of representation requires that the class representative plaintiffs not have interests which are materially adverse to the class. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Sharp Farms v. Speaks*, 917 F.3d 276, 295 (4th Cir. 2019) (class representatives must fairly and adequately protect interests of class). The putative class representatives must also "have a sufficient interest in the outcome of the case to ensure vigorous advocacy". *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 315 (E.D. Va. 2007) (citation omitted). The adequacy of representation factor tends to merge with the typicality and commonality requirements. *Deiter*,

436 F.3d at 466. The adequacy of representative factor further provides a basis upon which to consider the adequacy of proposed class counsel. *Id.* n. 20; *see also* Fed. R. Civ. P. 23(g).

The Court has already found that the claims of the putative class representatives are common and typical of the claims of the class. The fact that each of the named class plaintiffs has received and deposited remediation payments does not change this analysis – indeed, as noted above, there is no requirement that the representative's claims and the classes' claims be "perfectly identical or perfectly aligned." *Deiter*, 436 F.3d at 467. Chase has not identified any conflicts which would cause the named-plaintiffs' interests to be adverse to those of the class, and the Court's own inquiry has determined that there is no apparent conflict. *See Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001) (burden to demonstrate certification remains with plaintiffs and no adequacy is presumed in the absence of proof to the contrary). Further, plaintiffs have demonstrated that the class representatives will vigorously prosecute the action on behalf of the absent class members. [DE 174] Lowney Decl. ¶ 21 (plaintiffs have followed developments in the case, been diligent in responding to counsel's inquiries, provided information, and sat for depositions). Plaintiffs have satisfied their burden as to the adequacy of the proposed class representatives representation.

Proposed class counsel is also adequate. The record demonstrates the proposed class counsel are comprised of attorneys from three law firms, each of which have experience in litigating consumer and other class actions. [DE 174] Lowney Decl. ¶¶ 7-20; [DE 177] Shanahan Decl.; [DE 178] Griffin Decl. Notably, two of the firms were involved in similar litigation in this Court against Bank of America, in which the matter was settled, class was certified, and class counsel was found to be adequate. *See Childress v. Bank of Am. Corp.*, No. 5:15-CV-231-BO.

C.    Rule 23(b)(3) has also been satisfied.

Plaintiffs here seek to proceed under Rule 23(b)(3), which permits class certification where

the court finds that the questions of law or fact common to class members
predominate over any questions affecting only individual members, and that a class
action is superior to other available methods for fairly and efficiently adjudicating
the controversy.

Fed. R. Civ. P. 23(b)(3).  A showing of predominance under Rule 23(b)(3) is more demanding

than the Rule 23(a) prerequisites.  *Comcast Corp.*, 569 U.S. at 34.  To that end, courts must

"rigorously analyze each of the plaintiffs' claims to determine whether any of the distinct elements

of those actions might affect the predominance of common questions." *EQT Prod.*, 764 F.3d at

347.  However, that damages may be individual is rarely determinative of the Rule 23(b) inquiry

in consumer class actions. *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015) (quoting

*Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003)).  The focus rather is on

whether common questions of liability predominate.  *Id.*

In determining whether a class action is the superior method for adjudicating the

controversy, a court is guided by four factors: the class members' interests in controlling their own

litigation, the nature and extent of any pending related litigation, the desirability of prosecuting the

claims in one forum, and problems which might arise in managing the case as a class action.  Fed.

R. Civ. P. 23(b)(3)(A)-(D).

(i) Predominance.

(a) *Federal statutory claims.*

The Court considers first plaintiffs' SCRA claim.

The Servicemembers Civil Relief Act is part of a long record of congressional
concern for the domestic affairs of those in military service. Congress first adopted
the SCRA's predecessor, the Soldiers' and Sailors' Civil Relief Act (SSCRA) . . .
during World War I "in order to prevent prejudice or injury to [soldiers' and
sailors'] civil rights during their term of service and to enable them to devote their

entire energy to the military needs of the Nation," *id.* § 100. The Act provided
several protections for those with the "especial burdens" of active duty in the armed
forces. . . .Congress reenacted the SSCRA in 1940 . . . and expanded the Act
numerous times between 1942 and 2003, when it was renamed the Servicemembers
Civil Relief Act [.]

*Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 457–58 (4th Cir. 2011). As is relevant

here, the protection of the SCRA provides that servicemembers may not be charged greater than

6% interest per year on obligations or liabilities incurred before the servicemember enters military

service when the servicemember is on active duty. 50 U.SC. § 3937(a). The SCRA provides an

individual with an implied right of action to sue a lender to enforce the provisions of the SCRA.

*Frazier v. HSBC Mortg. Servs., Inc.*, No. 8:08-CV-02396-T24TGW, 2009 WL 4015574, at *5

(M.D. Fla. Nov. 19, 2009). There is no strict liability under this provision of the SCRA, and a

servicemember is only entitled to a remedy when the lender fails to retroactively compensate any

overcharges. *Id.* at *6.

Although Chase argues that individual issues will predominate any inquiry into plaintiffs'

SCRA claim, the Court disagrees, in large part because Chase has already engaged in such an

inquiry when it conducted its remediation program. To allow additional inquiry into whether the

methodologies used by Chase to identify customers eligible for remediation were sufficient would

not result in individual concerns predominating regarding Chase's liability for SCRA violations.

As noted above, that damages calculations would be individualized does not result in a

predominance of individual claims over those of the class.

Plaintiffs Truth In Lending Act (TILA) claim is premised on the notion that the class

members relied to their detriment on inaccurate interest rates on their monthly statements and were

thus damaged. *See* 15 U.S.C. § 1637(b). Plaintiffs' complaint alleges that, had plaintiffs known

that their monthly statements inaccurately reflected their interest rates and that they were being

charged illegally high interest rates, they would have closed their accounts with defendants and

moved to another bank. A violation of the TILA requires a plaintiff to show detrimental reliance. *Jaldin v. ReconTrust Co.*, 539 F. App'x 97, 103 (4th Cir. 2013) (citing *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1026 (11th Cir.2001)).

While the Court is cognizant of the Fourth Circuit's unpublished opinion holding that detrimental reliance is required to prove a TILA violation, it is persuaded that, in a case such as this, individual inquiries into reliance will not overwhelm the common proof available as to Chase's alleged liability for violation of TILA. "This is not a situation where individualized contracts were drafted and there is conflict over the terms communicated to the plaintiffs. Standardized forms and practices were utilized by [Chase]." *Arrington v. Colleen, Inc.*, No. CIV. AMD 00-1374, 2001 WL 34117734, at *4 (D. Md. Apr. 2, 2001). Accordingly, it is possible for plaintiffs to demonstrate classwide reliance, and to the extent individual inquiries remain, such inquiries are insufficient to preclude class certification. *See Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 964 (9th Cir. 2016).

(b) *State law and common law claims*.

(1) Choice of law.

Prior to engaging in an analysis of plaintiffs' state and common law claims, the Court must resolve Chase's argument that choice-of-law issues prevent these claims from being easily determined on a class-wide basis.

The parties agree that Delaware law applies to plaintiff's breach of contract claim. As to the remaining claims, the parties disagree as to whether only Delaware law or the law of every state in which a class-member resides will apply to plaintiffs' remaining state and common law claims. The parties do appear to agree that North Carolina choice-of-law rules apply.

Plaintiffs contend that, applying North Carolina choice-of-law rules, Delaware law applies to their state consumer fraud and common law claims based upon the law of the situs test, as all of the putative class members' accounts are located in Delaware. *See* [DE 229 at 15]; *Kenney v. Indep. Order of Foresters*, 744 F.3d 901, 905 (4th Cir. 2014); *Boudreau v. Baughman*, 322 N.C. 331, 335 (1988); *see also* [DE 73-25 at 4] (Delaware law applies to servicemember contracts and *accounts* without regard to conflict-of-law principles).

In making their arguments, the parties rely on *Harco National Insurance Company v. Grant Thornton LLP*, 206 N.C. App. 687, 695 (2010) which held that "the situs of the tort ordinarily is the state where the last event necessary to make the actor liable or the last event required to constitute the tort takes place, and the substantive law of such state applies." *Harco Nat. Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 695 (2010) (citation omitted). The *Harco* court went on to find that "a significant number of cases exist where a plaintiff has clearly suffered its pecuniary loss in a particular state, irrespective of that plaintiff's residence or principal place of business. In those cases, the lex loci test requires application of the law of the state where the plaintiff has actually suffered harm." *Id.* at 697.

The pecuniary loss suffered in this case took place in Delaware where the accounts are held. Accordingly, the Court agrees with plaintiffs that Delaware law applies to their state and common law claims.

(2) Breach of contract.

Plaintiffs have sufficiently demonstrated that their breach of contract claim relies upon Chase's standardized contracts and uniform SCRA policy, and that the material terms of Chase's SCRA contracts were the same over time. Breach of contract under Delaware law requires the plaintiff to show a contractual obligation, a breach of that obligation by the defendant, and resulting

18

damages. *Greenstar, LLC v. Heller*, 814 F. Supp. 2d 444, 450 (D. Del. 2011). When considering whether a breach of contract claim is suitable for class certification, class resolution of breach of contract claims has been found to be appropriate where contract terms are found to be materially similar. *See, e.g., Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (where contracts are materially similar, whether defendant breached obligation in contract to the class is a common question appropriate for class-wide determination); *In re Chase Bank USA, N.A. CHECK LOAN Contract Litig.*, 274 F.R.D. 286, 291 (N.D. Cal. 2011).

Plaintiffs have proffered sufficient evidence that the relevant SCRA program terms are materially similar. For example, Chase has admitted that during the relevant period it provided additional benefits to servicemembers including applying the interest rate cap not only to balances accrued prior to the beginning of active duty but also to balances created during active duty status and that it waived most account fees, including foreign transaction fees and annual fees, for SCRA accounts. [DE 73-26 at 24-26]. Additionally, as discussed above, Chase's firm-wide SCRA policies provide that it treated SCRA accounts similarly. *See* Lowney Decl. Ex. 14. Although there may be differences in the precise terms of SCRA contracts over the class period, plaintiffs have sufficiently demonstrated that the general question of whether Chase breached their SCRA contract terms is a question that can be decided on a class-wide basis, and that individual issues will not predominate.

(3) Negligence, negligent misrepresentation, and breach of fiduciary duty.

The elements of a claim for negligence under Delaware law are duty, breach, causation, and harm. *Hudson v. Old Guard Ins. Co.*, 3 A.3d 246, 250 (Del. 2010). The elements of a claim for negligent misrepresentation under Delaware law are "(1) a pecuniary duty to provide accurate information, (2) the supplying of false information, (3) failure to exercise reasonable care in

obtaining or communicating information, and (4) a pecuniary loss caused by justifiable reliance upon the false information." *Outdoor Techs. Inc. v. Allfirst Fin. Inc.*, No. 99C-09-151-WTQ, 2000 WL 141275, at *4 (Del. Super. Ct. Jan. 24, 2000) (citation omitted). A claim for breach of fiduciary duty under Delaware law requires proof that a fiduciary duty existed and that the defendant breached that duty. *Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010).

The Court considers first that these these claims are not a significant part of the case, insofar as plaintiffs' SCRA, breach of contract, and DCFA are the primary claims. *See In re Chiang*, 385 F.3d 256, 273 (3d Cir. 2004). Thus, whether there are individual determinations that are required for these claims is less likely to be determinative of the inquiry as to whether common issues will predominate. Moreover, plaintiffs allegations in support of their negligence and fiduciary duty claims all raise issues that are common to the class, and individual issues will not predominate. For example, plaintiffs have alleged that Chase provided account statements to the class members which reflected a lower rate than what was actually being charged and that when Chase, in connection with its remediation efforts, informed its customers that it may have charged improper interest and fees, it designed its communications with its account holders to conceal the nature of its SCRA and contract violations. Plaintiffs further allege that Chase's professed dedication to servicemembers, in particular to those vulnerable customers on active duty status, created a fiduciary relationship which Chase failed to maintain when it systematically overcharged its servicemember customers. *See Metro Ambulance, Inc. v. E. Med. Billing, Inc.*, No. C.A. 13929, 1995 WL 409015, at *2 (Del. Ch. July 5, 1995) (fiduciary relationship exists where one person puts special trust in and reliance on judgment of another). Whether a fiduciary duty was present and whether Chase was negligent are both questions amenable to common proof among the class.

(c) *State statutory consumer protection claims.*

(1) Delaware Consumer Fraud Act.

A Delaware consumer protection claim requires a plaintiff to show that the defendant engaged in conduct which violates the Delaware Consumer Fraud Act, the plaintiff was a victim of the unlawful conduct, and that there is a causal relationship between the unlawful conduct by the defendant and an ascertainable loss to the plaintiff. *Teamsters Local 237 Welfare Fund v. AstraZeneca Pharm. LP*, 136 A.3d 688, 693 (Del. 2016). A determination as to whether the Delaware Consumer Fraud Act (DCFA) was violated does not require a plaintiff to prove reliance. *See Pennsylvania Employee, Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 471 (D. Del. 2010).

At the outset, the Court notes that consumer fraud cases generally readily satisfy the predominance requirement. *Amchem Prod.*, 521 U.S. at 625. Whether or not Chase's actions violated the DCFA is a question which can be resolved on a class-wide basis without individual issues predominating. Plaintiffs have alleged that Chase knew that it had overcharged the putative class and that class members paid improper fees based on misrepresentations of amounts owed on their monthly statements. Because causation may be demonstrated through circumstantial class-wide evidence such as payment of an invoice, *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 481 (3d Cir. 2015); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120 (2d Cir. 2013), and the DCFA does not require a showing of detrimental reliance, individual issues will not predominate in determining plaintiffs' DCFA claim. *Brown v. Wells Fargo & Co.*, 284 F.R.D. 432, 447 (D. Minn. 2012).

(2) North Carolina Unfair and Deceptive Trade Practices Act.

As discussed above, because plaintiffs' accounts are held in Delaware, that was the situs of the loss. Because Delaware law applies, a claim under North Carolina's Unfair and Deceptive Trade Practices Act is inappropriate for class certification. *See, e.g., Martinez v. Nat'l Union Fire Ins. Co.*, 911 F. Supp. 2d 331, 338 (E.D.N.C. 2012) (dismissing NCUDTPA claim on finding that injury did not occur in North Carolina).

(d) *Statute of limitations.*

Chase further argues that various statutes of limitations are a barrier to class certification. To the extent any statutes of limitations would bar plaintiffs' claims, plaintiffs argue that equitable tolling can be applied on a class-wide basis through methods of common proof. First, plaintiffs' have alleged that Chase concealed its overcharges from the putative class members on a class-wide basis using standard and form letters and documents. Thus, any tolling argument that the putative class members have is dependent upon their being able to demonstrate concealment by Chase through common evidence. *See Minter v. Wells Fargo Bank, N.A.*, 279 F.R.D. 320, 328 (D. Md. 2012). Moreover, "Courts consistently hold . . . that the statute of limitations does not bar class certification, even when individual issues are certain to exist." *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 651 (S.D. Fla. 2015). Accordingly, the Court does not find that statute of limitations issues are a barrier to class certification.

(ii) Superiority of class litigation.

Finally, the Court determines that class litigation is the superior method for litigating the plaintiffs' claims. There appears to be no dispute that no class members have sought to control their own litigation since the filing of this suit and that no related litigation exists. Any problems which might arise from managing a large class are far outweighed by the benefit of adjudicating

what may amount to small recoveries for individual plaintiffs, who absent class certification might lack incentive to prosecute their own claims. *Amchem Prod.*, 521 U.S. at 617. Accordingly, the Court finds that the relevant factors weigh in favor of certifying the class.

In sum, plaintiffs have carried their burden to show that certification of a class action is appropriate as to each of their claims with the exception of their claim under the NCUDTPA. Plaintiffs have demonstrated that the putative class is ascertainable beginning January 1, 2005, and that the requirements of numerosity, commonality, typicality, and adequacy of representation have been satisfied. A determination as to whether Chase is liable for breach of contract and violations of the SCRA and the DCFA plainly can proceed using common proof, insuring that individualized issues will not predominate. Insofar as plaintiffs' remaining claims require resolution of individualized issues as to liability, the impact of these less significant claims is insufficient to disturb the conclusion that plaintiffs' allegations are suitable for class certification.

## CONCLUSION

Accordingly, for the foregoing reasons, plaintiffs' motion to certify class [DE 172] is GRANTED IN PART and DENIED IN PART. The class is defined as

> All persons who, at any time on or after January 1, 2005 (the "Class Period"), received reduced interest and/or fee benefits from defendant Chase Bank USA, N.A. on a credit card obligation or account because of an obligor's military service, but excluding persons who have executed a release of the rights claimed in this action.

Plaintiffs Gary Childress, Russell Ho, and Michael Clifford are named as the class representatives and plaintiffs' counsel with the law firms of Shanahan McDougal, Smith and Lowney, and Keller Rohrback are named as class counsel.

Plaintiffs shall show cause within fourteen (14) days of the date of entry of this order why the remaining defendants should not be dismissed. Plaintiffs shall further provide to the Court

their plan for providing the best notice practicable to the Rule 23(b)(3) class within fourteen (14) days of the date of entry of this order. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Defendants' motion to exclude the testimony of Arthur Olsen [DE 203] is DENIED. Defendants' motion to exclude the testimony of Jonathan Shefftz [DE 208] is GRANTED. Defendants' motion to exclude damages evidence [DE 213] is DENIED WITHOUT PREJUDICE. Defendants' motion for leave to file a surreply [DE 241] is GRANTED and the Court has considered the surreply in deciding the motion for class certification. Because a hearing on these matters has been held, the motion for hearing [DE 243] is DENIED AS MOOT. The consent motion for leave to file excess pages [DE 226] is GRANTED. For good cause shown, the motions to seal at [DE 184, 186, 219, 235, 245, and 249] are ALLOWED.

SO ORDERED, this ⟶ day of July, 2019.

TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE